## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES FIDELITY and | : | |
| GUARANTY COMPANY, | : | |
| 385 Washington Street, | : | CIV. NO. _____ |
| St. Paul, Minnesota  55102, | : | |
| | : | |
| Plaintiff, | : | |
| | : | COMPLAINT FOR |
| vs. | : | DECLARATORY RELIEF |
| | : | |
| CONSUMER INNOVATIONS, LLC, | : | |
| 7228 Dreamy Draw Drive, | : | |
| Phoenix, Arizona 19103, | : | **JURY TRIAL DEMANDED** |
| | : | |
| and | : | |
| | : | |
| WEBLOYALTY.COM., INC., | : | |
| 101 Merritt 7, Seventh Floor, | : | |
| Norwalk, Connecticut 06581, | : | |
| | : | |
| Defendants. | : | |
| | : | |

## COMPLAINT FOR DECLARATORY RELIEF

**AND NOW**, comes Plaintiff, United States Fidelity and Guaranty Company, by its attorneys, Cozen O'Connor, and in support of its Complaint for Declaratory Relief against the Defendant, Consumer Innovations, LLC, hereby states:

## INTRODUCTION

Plaintiff, United States Fidelity and Guaranty Company ("USF&G"), brings this action for declaratory judgment seeking a judicial declaration that it has no duty or obligation to indemnify the named insured, Consumer Innovations, LLC ("Consumer Innovations"), for the Judgment entered on October 6, 2005 in favor of Webloyalty.com, Inc. ("Webloyalty") and against Consumer Innovations, LLC ("CI") in the amount of $319,339.54 (the "Judgment"). Consumer Innovations was found guilty of the "willful" infringement of two separate copyrights

and Webloyalty was awarded statutory damages, attorneys fees and costs. Coverage for the Judgment is excluded by the knowledge of falsity and criminal acts exclusions of the insurance policy at issue. Moreover, Consumer Innovations, in direct contravention of its contractual duties under the insurance policy, failed to cooperate in the investigation, defense and settlement of the claim brought by Webloyalty to the detriment of, and prejudice to, USF&G. Consumer Innovations material breach of the cooperation clause of the insurance policy precludes coverage for the Judgment.

## PARTIES

1.      USF&G is a corporation duly organized and existing under the laws of the State of Maryland, having a principal place of business at 385 Washington Street, St. Paul, Minnesota, 55102, and at all times relevant hereto was duly authorized to issue insurance policies in the State of Arizona.

2.      On information and belief, Consumer Innovations is a corporation organized and existing under the laws of the State of Arizona with its principal place of business located at 7228 Dreamy Draw Drive, Phoenix, Arizona, 19103.

3.      On information and belief, Webloyalty is a corporation organized and existing under the laws of the State of Delaware with a principal place of business located at 101 Merritt 7, Seventh Floor, Norwalk, Connecticut 06581.

## JURISDICTION AND VENUE

4.      This is an action for declaratory judgment, pursuant to 28 U.S.C. §§2201 and 2202, regarding an insurance contract dispute, involving an amount in controversy in excess of $75,000, exclusive of interests and costs, between USF&G and Consumer Innovations.

5.      Jurisdiction is founded on diversity of citizenship, pursuant to 28 U.S.C. § 1332(a), since there is complete diversity of citizenship between USF&G and Consumer Innovations, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6.      Venue lies in the United States District Court for the District of Delaware pursuant to 28 U.S.C. §1391, as: (a) Webloyalty transacts business in the State of Delaware; (b) the underlying advertising injury which gives rise to this dispute was published in the State of Delaware; (c) Consumer Innovations transacts business in the State of Delaware; and (d) the acts and omissions of Consumer Innovations and Webloyalty which exclude the underlying claim for advertising injury under the policy of insurance occurred in the State of Delaware.

7.      An actual case or controversy of a justiciable nature exists between USF&G and Consumer Innovations, involving their respective rights and liabilities under a policy of insurance, and is dependent upon the principles of contract construction and interpretation. The controversy may be determined by a judgment of this action without other suits.

8.      All parties who have or claim an indispensable interest in the matter in controversy have been named in this action.

## FACTS

### A.      Consumer Innovations Policy

9.      USF&G issued a standard general comprehensive liability policy of insurance number BK01443023 to the named insured, Consumer Innovations, LLC. ("Policy") The Policy was in effect from May 14, 2003 through May 14, 2004. The Policy has a $1,000,000 per occurrence and advertising injury liability limit with no deductible. (A true and correct copy of the Policy is attached as Exhibit "1" to the accompanying Appendix of Exhibits).[1]

---

[1] Due to the voluminous nature of the exhibits referenced herein, and for the Court's convenience, a separate Appendix of Exhibits ("App.") has been compiled and has been filed contemporaneously with this Complaint.

10.     The Policy includes a Liability Coverage Part which includes coverage for "Advertising Injury" as follows:

### SECTION I – COVERAGE

A.      **Liability**

1.      **Insuring Agreement**

a.      We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage", "personal injury" or "advertising injury" to which this insurance applies.

*     *     *

b.      This insurance applies to:

*     *     *

(3)     "Advertising Injury" caused by an offense committed in the course of "advertising" your goods, products or services that:

(a)     Was first committed in the "coverage territory"; and

(b)     Was committed during the policy period.

11.     Section V of the Policy defines "Advertising" and "Advertising Injury" as follows:

### SECTION V - DEFINITIONS

1.      "**Advertising**" means attracting the attention of others by any means for the purpose of seeking customers or supporters or increasing sales or business.

2.      "**Advertising injury**" means injury arising out of one or more of the following offenses:

a.      Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

b.      Oral or written publication of material that violates a person's right of privacy;

c.      The use of another's advertising idea in your "advertising";

    **d.**    Infringement of another's copyright, trade dress or slogan in your "advertising".

\*    \*    \*

**21.**    "**Publishing**" means creating and producing any material in an electronic or printed format for distribution or sale to others for any purpose. …

12.    Section I. A. 2. of the Policy includes the following exclusions:

**2.**    **Exclusions Applicable to the Liability Coverage**

This insurance does not apply to:

\*    \*    \*

r.    **"Personal Injury" or "Advertising Injury"**

"Personal injury" or "Advertising injury"

(1)    Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

(2)    Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

(3)    Arising out of a criminal act committed by or with the consent of the insured;

(4)    For which the insured has assumed liability in a contract or agreement.  This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement;[2] or

\*    \*    \*

13.    Section IV of the Policy includes the following Policy Conditions:

**SECTION IV – CONDITIONS**

\*    \*    \*

---

[2] While Exclusion A.2.r was replaced in the "Liability Broadening Endorsement", the only change was to remove as an exclusion personal or advertising injury "for which the insured has assumed liability in a contract or agreement."

**2.      Duties In The Event Of Occurrence, Offense, Claim Or "Suit"**

**a.**      You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim.  Notice should include:

    **(1)**      How, when and where the "occurrence" or offense took place;

    **(2)**      The names and addresses of any insured persons and witnesses; and

    **(3)**      The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.**      If a claim is made or "suit" is brought against any insured, you must:

    **(1)**      Immediately record the specifics of the claim or "suit" and the date received; and

    **(2)**      Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.**      You and any other involved insured must:

    **(1)**      Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

    **(2)**      Authorize us to obtain records and other information;

    **(3)**      Cooperate with us in the investigation, settlement or defense of the claim or "suit"; and

    **(4)**      Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.**      No insured will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

*          *          *

**4.      Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable Limit of Liability. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

14.    The following Common Policy Conditions apply to all coverages:

**Common Policy Conditions**

**F.    Transfer of Your Rights And Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual Named Insured. …

**B.    The Webloyalty Complaints**

**1)    Webloyalty's Original Complaint**

15.    Webloyalty's original Complaint was filed against Consumer Innovations on February 9, 2004 in an action styled as Webloyalty.com Inc. v. Consumer Innovations, LLC, Civil Action No. L:04-0090 (KAJ) in the United States District Court for the District of Delaware (the "Delaware action").   A true and correct copy of the Webloyalty Complaint ("Complaint") attached as Exhibit "2" of App.

16.    The Complaint alleged that, beginning on or about January 15, 2004, without license, permission, or consent, Consumer Innovations copied and published on the internet at the Walter Drake website[3], substantial portions of Webloyalty's copyrighted Sell Page text that was protected by Copyright Registration No. TX5842219.  See Complaint at ¶¶12, 14, 19, 23.

---

[3] See C.  Background Facts, *infra*, at ¶70 for additional background information related to Walter Drake website.

See Webloyalty's[4] Sell Page attached as Exhibit "3" of App.  A true and correct of Consumer Innovations[5] Sell Page is attached as Exhibit "4" of App.

17.     The Complaint also alleged that Consumer Innovations had copied and published "the look and feel" of Webloyalty's internet advertising Banner.  See Complaint at ¶¶ 15, 29.  A true and correct copy of Webloyalty's Banner is attached as Exhibit "5" of App..  A true and correct copy of Consumer Innovations' Banner is attached as Exhibit "6" of App.

18.     The Complaint alleged copyright infringement pursuant to the Copyright Act, 17 U.S.C. § 501 (Count I), and unfair competition in violation of the Lanham Act, 15 U.S.C. §1125(a) (Count II).  See Complaint at ¶¶ 22-25, 31.

19.     Webloyalty sought a declaratory judgment that Consumer Innovations had infringed Webloyalty's copyright for the Sell Page, that such infringement was knowing and willful, and that Consumer Innovations be enjoined from continuing to infringe Webloyalty's Copyright.  See Complaint at pp. 7-8, Prayer for Relief ¶¶ a-c.

20.     Webloyalty further sought a declaratory judgment that Consumer Innovations violated the Lanham Act by utilizing advertisements that were confusingly similar to Webloyalty's trade dress, and that it be enjoined from continuing to compete unfairly.  See Id. at 8, ¶¶d-e.

21.     The Complaint did not plead copyright infringement of Webloyalty's Copyright Registration No. TX5875671 for the Banner.

22.     Webloyalty sought a monetary judgment for actual damages comprised of Consumer Innovations actual profits and Webloyalty's statutory damages, including attorneys'

---

[4] Webloyalty sold its products on the Walter Drake website under the trade name "Reservation Rewards."  See ¶69, infra.

[5] Consumer Innovations sold its products on the Walter Drake website under the trade name "Travelers Innovations."  See ¶79, infra.

fees and costs, treble damages, punitive damages, as well as pre-judgment and post judgment interest. See Id. at 8-9, ¶¶ f-m.

23.     Simultaneously with the filing of the Complaint, Webloyalty filed an Application for a Temporary Restraining Order, or in the alternative, a Preliminary Injunction ("Application") based upon the conduct which is the subject of Webloyalty's Complaint. See a true and correct copy of the Court's Docket ("Docket") attached as Exhibit "7" of App. at docket entry ("DE") 2.

### b)     Webloyalty's Amended Complaint

24.     On May 26, 2004, Webloyalty filed an Amended Complaint that included an additional claim relating to Consumer Innovations' "Interim Sell Page" that was published on the internet at the Walter Drake website between February 9 and February 13, 2004. A true and correct copy of the Amended Complaint is attached as Exhibit "8" of App.

### C.     Background Facts

25.     Webloyalty is an online business which markets membership programs to internet consumers including a travel discount club called "Reservation Rewards." See Complaint at ¶7.

26.     Walter Drake is an on-line company which specializes in offering consumers the latest in kitchenware, organizers, home and garden, stationary and personalized gifts for purchase. Walter Drake has been in business since 1947.

27.     Webloyalty first began working with Walter Drake in connection with post-transaction marketing in July 2002. Trial Transcript (Tr.) at 78:21-25. A true and correct copy of all relevant excerpts of the Trial Transcript cited herein are collectively attached as Exhibit "9" of App.

28.     In November of 2003, Webloyalty entered into an agreement with Walter Drake whereby consumers making an online purchase of a Walter Drake product would be offered membership in Reservation Rewards and other Webloyalty discount programs. (Tr. 89:7-90:3).

29.     Upon completing the purchase of a product from the Walter Drake website, the consumer would be presented with a confirmation page that included an advertisement "banner" or "button" ("Banner") for the Webloyalty website. (Tr. 79:18-22; 88:25 – 89:1).

30.     If the consumer clicked on the Banner, they are automatically transferred to a sell page ("Sell Page") on the Webloyalty website.

31.     Upon entering the Sell Page, the customer would be offered the opportunity to participate in the Webloyalty Reservation Rewards program, a type of on-line travel coupon program, for a fee of $9 per month.  Id.

32.     The Webloyalty Banner began appearing on the Walter Drake website on November 24, 2003. (Tr. 73:25- 74:1).

33.     The Webloyalty Sell Page bore a copyright symbol, having been registered with the U.S. Copyright Office on November 20, 2003.  (Tr. 73:20-4:6)  See also Ex. C of Complaint and Ex. G of Amended Complaint.

34.     The Webloyalty Banner did not bear a copyright symbol, as it was not registered with the U.S. Copyright Office until February 17, 2004, after the alleged infringement had occurred and eight (8) days after the Complaint was filed.  (Tr. 92:3-5).

35.     Like Webloyalty, Consumer Innovations is an online business which markets membership programs to internet consumers including a travel discount club called "Traveler Innovations."  (Tr. 120:24-121:3).

36.     In January of 2004, Walter Drake entered into an agreement with Consumer Innovations whereby it would place the Consumer Innovations' Banner on fifty-percent of its

consumer confirmation pages.//was approached by a broker list sues in Nov. 2003 (124:20-125:6)

37.     Beginning on January 15, 2004, Walter Drake ran a test program, in which it assigned 50% of the customers who had completed a purchase to Consumer Innovations and the remaining 50% of the customers to Webloyalty.  (Tr. 211:8-25)

38.     The customers transported to Consumer Innovations website would be offered their competing on-line travel coupon program, Travelers Innovations, for a fee of $7 per month. (Tr. 48:2-5; 204:23-24 and 88:24-89:1).

39.     These customers would be transported automatically to the Consumer Innovations Sell Page through a similar Banner that appeared on the Walter Drake confirmation pages. (Tr. 171:3-7).

40.     Both agreements with Walter Drake provided that consumers joining either the Webloyalty or the Consumer Innovations discount program would be given a $10 credit toward their next Walter Drake purchase.  (Tr. 100:20-25; ¶14 and Ex. B of Complaint; ¶14 of Amended Complaint)

41.     On January 15, 2004, Consumer Innovations' Banner was placed on the Walter Drake website.  (Tr. 203:17-24; 204:9-19)

42.     Once the Consumer Innovations' Banner became active on the Walter Drake website, the Banners appearing on the Walter Drake confirmation pages were equally divided between Webloyalty and Consumer Innovations.  (Tr. 203:17-24)

43.     On January 16, 2004, an employee of Webloyalty, Don Gustafson, visited Consumer Innovations' Banner and Sell Page, and returned on January 28, 2004 to make a purchase.  (Tr. 106:25 – 107:1; 108: 3-5).

44.    Due to the alleged similarities of the Banner and Sell Page being utilized by Consumer Innovations, Webloyalty filed a Complaint and Application on February 9, 2004.  (Tr. 6:2-10; Docket at DE 1 and 2).

45.    Webloyalty did not contact Consumer Innovations about the offending Sell Page or issue a Cease and Desist letter before filing suit.  (Tr. 106:18–108:5, and 165:12-15).

46.    Webloyalty lost $24,500 in total revenue due to the fact that Walter Drake decided to run the test between Webloyalty and Consumer Innovations.  (Tr. 205:12-14).

47.    While Consumer Innovations made $1,000 in total revenue during the thirty day period when its Sell Page was posted on the Walter Drake website (Tr. 166:11-14), they only netted a profit of approximately $300.  Id.  (Consumer Innovations' Objections and Responses to Webloyalty's Proposed Findings of Fact and Conclusions of Law at 4 attached as Exhibit "10" to App.).

### D.    Procedural Background of the Delaware Action

48.    Webloyalty's Original Complaint and Application were filed on February 9, 2004. Docket at DE 1 and 2.

49.    In response to Webloyalty's February 9, 2004 Application for a Temporary Restraining Order, Consumer Innovations revised its Sell Page (the "Interim Sell Page").  See ¶16  and Exhibit "G" of Amended Complaint.

50.    Consumer Innovations' "Interim Sell Page" was published on the Walter Drake website from February 9, 2004 through February 13, 2004.  Id.

51.    On February 10, 2004, a hearing for a temporary restraining order was held by conference call with Judge Kent Jordan in the Delaware action to determine whether Consumer Innovations should be enjoined from utilizing the Banner and Sell Page.  (Tr. 6:11-13).

52.    Prior to a second injunction hearing on February 13, 2004, Consumer Innovations changed the Sell Page a second time.  (Tr. 7:1-16).

53.    Although Webloyalty agreed that the third version of the Sell Page did not constitute infringement, Walter Drake ended the test program and removed the Consumer Innovations Banner and link to the Consumer Innovations' Sell Page from its website on February 15, 2004.  (Tr. 203:13-204:19).

54.    On February 13, 2004, Consumer Innovations filed a Motion to Dismiss the Delaware Action for lack of personal jurisdiction.  Docket at DE 16.

55.    On March 8, 2004, Webloyalty filed an opposition to the Motion to Dismiss for lack of jurisdiction and a Cross motion for jurisdictional discovery if its opposition were not successful.  Docket at DE 26.

56.    On May 20, 2004, the Court entered a scheduling order that discovery be completed by September 14, 2004, and scheduled a jury trial for February 22, 2005.  Docket at DE 45.

57.    On June 15, 2004, a court-assisted mediation was held between the parties. Docket at DE 55.

58.    Oral argument on Consumer Innovations Motion to Dismiss was scheduled for August 23, 2004.  Docket at DE 59.

59.    On August 23, 2004, the day the Motion to Dismiss was scheduled for oral argument, Consumer Innovations notified the Court by letter that the Motion may be withdrawn. Docket at DE 82.

60.    On September 2, 2004, Consumer Innovations formally withdrew its Motion to Dismiss.  Docket at DE 84.

61.    On September 21, 2004, Consumer Innovations filed an Answer to the Amended Complaint.  A true and correct copy of the Answer is attached as Exhibit "11" of App.  See also Docket at DE 88.

62.    On October 12, 2004, Consumer Innovations filed a Motion for Summary Judgment based upon the substantive grounds of questioning: (1) whether the overall look and feel, as well as the text of Webloyalty's Sell Page were sufficiently original to be copyrightable; and (2) whether the language and graphics common to both Sell Pages are ideas that can be expressed in a limited number of ways, such that Webloyalty's copyright claims are barred by the legal doctrines of merger and scenes-a-faire.  (Docket at DE 90).

63.    By Memorandum Order entered on January 13, 2005, the Court denied Consumer Innovations' Motion for Summary Judgment and denied Webloyalty's Motion for discovery concerning personal jurisdiction as moot.  (Docket at DE 101).

64.    In denying Consumer Innovations Motion for Summary Judgment, the Court found that neither the merger doctrine nor the scenes-a-faire doctrine applied to the copyrighted language in this case, but concluded that material issues of fact may exist as to the protectability of the Sell Page and Banner under the Copyright Act because the language therein may be merely functional or standard in the industry and, therefore, was not originally created by Webloyalty.  (A true and correct copy of the January 13, 2005 Order is attached as Exhibit "12" to App.)

65.    At the February 1, 2005 pre-trial conference, the Court invited briefing on the issue of whether Webloyalty's copyright was invalid as being based upon preexisting works, but later found that this defense had been waived.

66.    By Memorandum Order, dated February 17, 2005, the Court ruled that, "although a finding of copyright infringement may involve questions of fact, the protectability of

copyrighted material such as Webloyalty's Sell Page is an issue of law which I will have to determine at a later time." (A true and correct copy of the February 17, 2005 Order is attached as Exhibit "13" to App.)

67.    On February 18, 2005, a final pre-trial conference was held before Judge Jordan. (Docket at DE 122).

68.    On February 22, 2005, a one day bench trial was held before Judge Jordan. (Docket at DE 123 and 124).

69.    At the conclusion of the trial, the court found "actual copying" of the Webloyalty Sell Page but made no findings as to whether the infringement was "willful". (Tr. 216:1-218:24).

70.    On March 2, 2005, the parties and USF&G engaged in a post-trial mediation with the Court which was not successful.

71.    On March 16, 2005, both parties filed Proposed Findings of Facts and Conclusions of Law. (Docket at DE 132 and 133).

72.    Additionally, Webloyalty filed an application for attorneys' fees and costs as the prevailing party. (Docket at DE 134).

**E.    USF&G Defended Consumer Innovations Under a Reservation of Rights**

73.    Upon receipt of Webloyalty's original Complaint and Application, Consumer Innovations contacted its general counsel with the Cavanaugh Law Firm (the "Cavanaugh Firm"). (Tr.165:12-17).

74.    Consumer Innovations was represented by the Cavanaugh Law Firm during the initial February 10, 2005 conference call with Judge Jordan in the Delaware action.

75.    On February 10, 2004, Consumer Innovations notified USF&G of the filing of the Complaint and Application for Temporary Restraining Order by facsimile and by telephone.

76.    By letter dated February 12, 2004, USF&G agreed to provide Consumer Innovations with a defense to the Complaint subject to the following reservation of rights: (1) demands for injunctive relief are not covered under the Policy; (2) demands for punitive damages and lost profits are not covered under the Policy; (3) costs incurred by or on behalf of Consumer Innovations to destroy, change or alter the alleged infringing material are not covered damages under the Policy; (4) Consumer Innovations alleged "knowing and willful" infringement is excluded from coverage under the "knowledge of falsity exclusion"; and (5) USF&G will not be liable for any damages that are in excess of the applicable Limit of Liability in the Policy.  (A true and correct copy of USF&G's reservation of rights letter is attached as Exhibit "14" to App.)

77.    USF&G also reserved its rights to deny coverage on the basis of additional grounds.

78.    In accordance with its reservation of rights, USF&G retained the Delaware law firm of Marshall, Dennehey, Warner, Coleman & Goggin ("Marshall Dennehey") on February 12, 2004 to defend Consumer Innovations.

79.    Marshall Dennehey and the Cavanaugh Firm worked as co-counsel in defending Consumer Innovations in the Delaware Action.  **Marshall Dennehey filed a Motion for John Titus, Esquire and R. Corey Hill, Esquire of the Cavanaugh Firm to appear Pro Hac Vice in the Delaware Action on February 13, 2004.  (Docket at DE 10 and 15).  The Court granted the Motion on February 17, 2004.  (Docketed on February 17, 2004).**

80.    Although not required to do so, USF&G agreed to fully reimburse Consumer Innovations for the fees and expenses incurred by its independent counsel, the Cavanaugh Firm, throughout the Delaware Action.  (Docket at DE 16).

81.    Based upon Consumer Innovations' representations that it had never transacted business with a resident of the forum state, Delaware, the Cavanaugh Firm prepared and Marshall Dennehey filed the Motion to Dismiss for lack of jurisdiction.

82.    Discovery revealed that Consumer Innovations had made sales to approximately seventy (70) Delaware residents between February and August 2004.

83.    On September 2, 2004, Consumer Innovations authorized the withdrawal of the Motion to dismiss for lack of jurisdiction.  (Docket at DE 84).

84.    Once the Motion to Dismiss was withdrawn, Marshall Dennehey, with the Cavanaugh firm's assistance, prepared and filed an Answer to the Amended Complaint.  (Docket at DE 88)

85.    Consumer Innovations' Answer denied that it had copied the Webloyalty Sell Page and denied that it had engaged in any willful infringement of Webloyalty's copyright or trade dress.

86.    USF&G continued to defend Consumer Innovations under a reservation of rights through trial and judgment.

## F.    Discovery in the Delaware action

87.    On May 26, 2004, Webloyalty served its Request for Production of documents. (Docket at DE 51).

88.    On July 9, 2004, Consumer Innovations produced documents in response to Webloyalty's Request for Production.

89.    On July 26, 2004, Jason Edwards, Consumer Innovations' President was deposed and was represented at the deposition by Marshall Dennehey.[6]

---

[6] All relevant excerpts of the deposition of Jason Edwards cited herein are collectively attached as Exhibit "15" to the Appendix of Exhibits.

90.    On July 27, 2004, Matthew Gordon, Consumer Innovations' Vice President of Marketing was deposed and was represented at the deposition by Marshall Dennehey.[7]

91.    Mr. Gordon, the person responsible for the design and layout of Consumer Innovations' Sell Pages, testified at his deposition that the design work was contracted out to a third party, Hungry Mind Interactive ("Hungry Mind").  Id. at 25:3-22.

92.    Mr. Gordon testified at his deposition that although he provided creatives to Hungry Mind, these consisted mainly of language as opposed to graphics.  Id. 53:5-56:20.

93.    Gordon also testified that while he had viewed Webloyalty's Sell Page prior to the design phase of the Consumer Innovations Sell Page, he had not printed it out and had not intended to copy it.  Id. at 45:1-46:6' 47:13-23.

94.    Mr. Gordon further testified that he made approximately seven (7) changes from the first draft of the Consumer Innovations Sell Page to its final form.  Each of these changes was from language **not** in Webloyalty's Sell Page to language that **was** in Webloyalty's Sell Page.  Id. at 108:13-109:7.

95.    In the week following the Consumer Innovations' depositions, Webloyalty issued document Subpoenas to all of Consumer Innovations' identified clients, seeking information specific to marketing activities targeted to, or sales conducted in Delaware.

96.    Webloyalty also issued a deposition and document Subpoena to Hungry Mind.

**G.    The February 22, 2005 Bench Trial**

97.    On February 17, 2005, in advance of the pre-trial conference on February 18, 2005, Webloyalty produced Exhibit PTX 43, Consumer Innovations "first draft" of the Sell Page

---

[7] All relevant excerpts of the deposition of Matthew Gordon cited herein are collectively attached as Exhibit "16" to the Appendix of Exhibits.

prepared by Mr. Gordon, as part of its exhibits to be submitted at trial. (A true and correct copy of the "first draft" Sell Page is attached as Exhibit "17" to App.)

98.    Consumer Innovations' "first draft" of the Sell Page had been provided by Hungry Mind in response to the Webloyalty Subpoena.

99.    Consumer Innovations' "first draft" of the Sell Page was mailed electronically by Mr. Gordon to Hungry Mind on December 17, 2003, after Mr. Gordon had made a purchase from Walter Drake, viewed Webloyalty's Sell Page and accepted an offer to join Webloyalty's Reservations Rewards program. Id.

100.    Consumer Innovations' "first draft" of the Sell Page included Webloyalty's customer service telephone number. (Tr. 133:4-134:16)

101.    Consumer Innovations' "first draft" of the Sell Page had not been provided by Consumer Innovations to Marshall Dennehey or USF&G.

102.    Consumer Innovations' "first draft" of the Sell Page was not included in Consumer Innovations' document production to Webloyalty because Consumer Innovations' defense counsel was not aware of its existence at the time of the production.

103.    Defense counsel for Consumer Innovations first became aware of Consumer Innovations' "first draft" of the Sell Page on February 17, 2005.

104.    In response to the February 17, 2005 Memorandum Order and Webloyalty's Pre-trial submission, Consumer Innovations offered to stipulate that it had "copied" Webloyalty's Sell Page, but that any finding of infringement was "non-willful". (A true and correct of Proposed Pre-trial Stipulation is attached as Exhibit "18" to App.)

105.    Consumer Innovations also offered to withdraw its prayer for a jury trial but contended that, pursuant to the February 17, 2005 Memorandum Order, issues of fact and law remained as to: 1) whether the "original" elements of the Sell Page Copyright (TX5842219) were

entitled to copyright protection; 2) whether, and the extent to which, the Banner Copyright (TX5875671) was entitled to copyright protection; and 3) whether Consumer Innovations can be found liable for violating the Lanham Act.  Id.

106.    Webloyalty refused to agree to the proposed Stipulation.

107.    During the one day bench trial, five witnesses, all called by Webloyalty, testified: Richard Fernandes, Tamra Lichtman and Martin Isaacs from Webloyalty, and Matthew Gordon and Jason Edwards from Consumer Innovations.

108.    At the conclusion of the trial, the Court remarked that in regards to the Sell Page that there was "overwhelming" evidence that "actual copying" had taken place.  (Tr. at 216:1-3).

109.    The Court made a finding that copying actually did take place, and that "the copying is obvious."  (Tr. at 216:18-20; 217:21-22).

110.    With regard to the testimony provided by Consumer Innovations' employees Matthew Gordon and Jason Edwards the Court stated as follows:

> In fact, I have to say, looking directly at you, Mr. Gordon and Mr. Edwards, that I am flabbergasted that anybody could, in the face of the evidence presented in this courtroom, maintain the position that there was not actual copying.
>
> And I think I say this having given it appropriate thought.  *It borders, gentlemen, if not crosses the border, into a criminal act, perjury, to look at a sheet of paper which is a draft of your Sell Page, Exhibit 43, which contains Webloyalty's phone number in it and assert that it is not an instance of copying.  It is a stunning position to take.*  I do not understand what motivated that testimony here in court today but it is, to put it mildly, incredible.
>
> So I really do not need a lot from the parties on the question of whether or not there has been copying.  The record on that is completely solid in my view.

(Tr. at  216:3-20) (emphasis supplied).

111.    On the issue of whether Consumer Innovations "actual copying" of the Webloyalty Sell Page was a "willful" copyright infringement, the Court stated as follows:

> And it certainly does you [Consumer Innovations] no good, in the context of what you need to demonstrate in this case, which is that your behavior was not willful.

They [Webloyalty] need to prove its [sic] willful, the burden isn't on you, but having found actual copying ***and having found that your testimony on that point is past unbelievable***, I'll wait and see what the record is but I would say you have a ***very, very, very hard road to hoe to overcome the evidence that has been put in here today.***

(Tr. at 216:25 -217:7) (emphasis supplied).

112.    The Court did not specifically address whether "actual copying" occurred relative to the Webloyalty Banner.

113.    The Court did not make specific findings that Consumer Innovations' trade dress, or its combined use of the Banner and Sell Page, constituted unfair competition in violation of the Lanham Act.

### H.    USF&G Supplements its Reservation of Rights

114.    By letter, dated March 10, 2005, based upon the "developments surrounding the testimony at trial" and the "mediation before Judge Kent Jordan," USF&G reminded Consumer Innovations of the Policy Conditions and Consumer Innovations' obligations thereunder including the following: (1) Consumer Innovations obligation to cooperate with USF&G in the investigation, settlement or defense of the suit; (2) Consumer Innovations may not, except at its own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without USF&G's consent; (3) although a person or organization may sue USF&G to recover on an "agreed settlement" or on a final judgment against an insured obtained after an actual trial, USF&G will not be liable for damages that are not payable under the terms of the Policy or that are in excess of the applicable Limit of Liability; (4) in order for a settlement to be an "agreed settlement," the settlement and release of liability must be signed by USF&G, Consumer Innovations and Webloyalty.  (A true and correct copy of the March 10, 2005 correspondence is attached as Exhibit "19" to App.)

115.    By letter, dated March 18, 2005, Consumer Innovations forwarded a "draft" document entitled "Settlement Agreement and Covenant Not to Execute" and advised that

Consumer Innovations would enter into the agreement unless USF&G withdrew its reservation of rights within five (5) days. (A true and correct copy of the March 18, 2005 correspondence is attached as Exhibit "20" to App.)

116.   The "Settlement Agreement and Covenant Not to Execute" was in the nature of an assignment of rights and did not settle any substantive issue of liability or damages, but rather limited Webloyalty to a recovery against the Policy for any judgment entered by the Court but, did not "in any way affect the carrier's right to continue challenging coverage under the policy." Id.

117.   By letter dated April 6, 2005, [8] USF&G timely responded to Consumer Innovations' letter as follows: 1) USF&G is not willing to waive or withdraw its reservations of rights with regard to defense or indemnity; 2) USF&G has been and will continue to provide a defense in the case under its reservation of rights which includes not only the payment of attorneys' fees and costs for assigned defense counsel but also for attorneys' fees and costs incurred by the insured's personal counsel (the Cavanaugh Firm); 3) USF&G does not oppose Consumer Innovations' assignment of rights for claims validly covered under the Policy; and 4) USF&G is not bound by the terms of the draft agreement, including the provisions for choice of law, any waiver or potential waiver of rights of appeal. (A true and correct copy of the April 6, 2005 correspondence is attached as Exhibit "21" to App.)

118.   By letter dated April 12, 2005, Consumer Innovations advised that it had entered into a revised "Settlement Agreement and Covenant Not to Execute" which purported to assign to Webloyalty any claims Consumer Innovations may have for coverage and for breach of

---

[8] The date recorded on the referenced letter reads "April 6, 2004" but it is clearly a typographical error as the first paragraph of the letter alludes to two letters dated in March 2005.

contract under the Policy, and for bad faith. (A true and correct copy of the April 12, 2005 correspondence which includes the agreement is attached as Exhibit "22" to App.)

119.    USF&G was not provided with an opportunity to review the final version of the "Settlement Agreement and Covenant Not to Execute" before it was executed. (See USF&G letter dated May 6, 2005 to R. Corey Hill attached as Exhibit "23" to App.)

120.    By letter dated May 6, 2005, USF&G affirmatively stated that it would continue to provide a defense to Consumer Innovations under its reservation of rights. USF&G continued to object to the assignment of any alleged claim for bad faith, as there can be no assignment of bad faith where no bad faith exists. In addition, USF&G continued to reserve its right to assert all applicable coverage defenses to any claims that are validly assigned by Consumer Innovations and, to the extent that the claims are not covered under the Policy, to assert that the claimed damages are not covered, or are not reasonable under the circumstances. <u>Id.</u>

121.    By letter dated May 6, 2005, USF&G supplemented its reservation of rights under Section I A.2(r)(3)of the Policy which excludes coverage for advertising injury if "arising out of a criminal act committed by or with the consent of the insured." (A true and correct copy of the additional May 6, 2005 correspondence is attached as Exhibit "24" to App.)

122.    In addition, USF&G further supplemented its reservation of rights under the "cooperation clause" of the Policy Conditions found in the Liability Coverage Part which states in pertinent part at Section 2.c.(3) that the insured must cooperate with USF&G in "the investigation, settlement or defense of the claim or 'suit'." <u>Id.</u>

### I.    Webloyalty's Proposed Findings of Fact and Conclusions of Law on Willfulness

123.    On March 16, 2005, Webloyalty submitted Proposed Findings of Fact and Conclusions of Law in the Delaware Action. (A true and correct copy of Webloyalty's Proposed

Findings of Fact ("WPF") and Conclusions of Law ("WPC") are attached as Exhibit "25" to App.)

124.    Webloyalty alleged that Consumer Innovations acted "willfully" to cause injury in knowingly and intentionally copying language from Webloyalty's Sell Page and its Banner advertisement. See WPF at ¶¶38-41.

125.    Webloyalty proposed the following findings of fact with regard to the evidence adduced at trial in support of its allegations that Consumer Innovations acted "willfully" to cause injury:

(a)    Consumer Innovations knowingly and intentionally copied language from Webloyalty's Sell Page and its Banner advertisement. Id. at ¶¶23, 31.

(b)    Consumer Innovations testified falsely under oath in its deposition in denying that it had copied the Sell Page. Id. at ¶24.

(c)    Consumer Innovations testified falsely under oath at trial in denying that it had copied the Sell Page. Id. at ¶¶24, 40.

(d)    Consumer Innovations failed to produce PTX 43, the first draft of its Sell Page which has Webloyalty's customer service telephone number in it. Id. at ¶40.

(e)    Both Mr. Edwards and Mr. Gordon lack any remorse for their actions and have testified that they would do this again, but for the fear of litigation. Id. at ¶41; (Tr. at 151:1-6; 179:10-180:11; 183:5-184:21)

126.    In its Proposed Findings of Fact, Webloyalty alleged that Consumer Innovations copied Webloyalty's advertisements, lied about it, and attempted to cover it up with further lies. Id. at ¶40.

### J.    The Court's Judgment of October 6, 2005

127.    A final Judgment was entered in the Delaware action on October 6, 2005 (the "Judgment").  (A true and correct copy of the Judgment is attached as Exhibit "26" to App.)

128.    Consumer Innovations was found guilty of the "willful" infringement of two separate copyrights.  Id. at ¶¶1 and 2.

129.    The Judgment entered totaled $319,339.54, consisting of $50,000 in statutory damages and $226,611.75 in attorneys' fees and $42,727.79 in costs.  Id. at ¶¶1, 2, and 4.

130.    The Judgment included a permanent injunction against Consumer Innovations from using the Sell Page or Banner or any other substantially similar material.  Id. at ¶3.

131.    Judgment was entered in favor of Consumer Innovations on Webloyalty's claim for trade dress infringement under the Lanham Act.  Id. at ¶5.

### K.    The Court's Findings of Fact and Conclusions of Law

132.    The Judgment was entered for the reasons stated in the Court's September 26, 2005 Post-Trial Findings of Fact and Conclusions of Law.  (A true and correct copy of the Court's September 26, 2005 Post-Trial Findings of Fact and Conclusions of Law is attached as Exhibit "27" to App.)

133.    The Post-Trial Findings of Fact and Conclusions of Law included, *inter alia*, the following Findings of Fact:

### II.    FINDINGS OF FACT

*       *       *

7.    Matthew Gordon, Director of Interactive Marketing at CI[9] (Tr. at 151), testified that he created a CI sell page for use with the Walter Drake confirmation page in December 2003 and January 2004.  (Tr. at 126).

_____

[9] Throughout its Findings of Fact and Conclusions of Law Consumer Innovations was identified as "CI" by the Court.

8.      On December 16, 2003, Gordon made an online purchase from Walter Drake, clicked on the Webloyalty Banner, examined the Webloyalty Sell Page, and joined Webloyalty's Reservation Rewards program.  (Tr. at 53, 122-23; PTX 36.)

9.      On December 17, 2003, Gordon sent an e-mail to Hungry Mind, a company that designs internet sites, attaching a first draft of text for a CI Sell Page.  (Tr. at 130; PTX 43.)  This draft was nearly identical to Webloyalty's Sell Page, except for seven paragraphs which describes the particular items of the CI Traveler Innovations reward program (which differed from the terms of the Webloyalty's program).  (Tr. at 121-22; PTX 43A).  Within the identical language, the CI draft sell page actually included Webloyalty's customer service telephone number in the following sentence: "If, at any time, you are not completely satisfied during your trial [membership in the program] or thereafter simply call Traveler Innovations toll free at 1-888-688-5995 to let us know you wish to cancel …."  (Tr. at 133; PTX 43A).

10.     Before commencing its sell page to the Walter Drake site on January 15, 2004, CI generated additional drafts.  In one intermediate draft of January 13, 2004, the language on CI's sell page contained slight differences from the Webloyalty Sell Page.  (PTX 44.)  But the final version that was connected to the Walter Drake site on January 15 (PTX 3) was revised in a manner that made the text in certain portions virtually identical to the Webloyalty Sell Page (PTX 2).  (Tr. at 139-45). The final CI Sell Page was connected with the Walter Drake site for approximately one month – from January 15 to February 16, 2004.  (Tr. at 203.)

11.     To connect Walter Drake customers to the CI Sell Page, CI used a banner (PTX 7) that is identical to the Webloyalty Banner except that "Reservation Rewards" was replaced by "Traveler Innovations."

12.     Gordon and Jason Edwards (CI's President) testified that, as of December 2003, they knew that copying was wrong.  (Tr. at 122, 124, 176-78.)  Gordon understood the meaning of the copyright symbol.  (Tr. at 122-24.)

                              *        *        *

134.    Based upon the Findings of Fact, the Court made the following Conclusions of Law in regards to its conclusions that Consumer Innovations' copyright infringements were "willful" and Consumer Innovations' "willful" conduct warranted the award of significant statutory damages and attorneys' fees and costs:

## III.    CONCLUSIONS OF LAW

A.      <u>Copyright Infringement</u>

*      *      *

9.    Second, large sections of the CI Sell Page are identical to the Webloyalty Sell Page.  The identical language in the final versions of the two Sell Pages reveals a probative similarity – and this, coupled with CI's access to the Webloyalty page, is sufficient to show that CI engaged in actual copying.  The presence of Webloyalty's telephone number on the CI first draft is compelling additional evidence of copying; in fact, copying is the only reasonable explanation for the phone number to appear on CI's draft.  As noted at the bench trial, CI was caught "red handed." (Tr. at 217)

B.    Willfulness

*      *      *

13.    Copyright infringement is willful when the defendant "actually knew it was infringing the plaintiff's copyrights or recklessly disregarded that possibility."  *Schiffer Publ'g, Ltd. v. Chronicle Books, LLC*, No. CIV.A.03-4962, 2005 WL 67077, at *5 (E.D. Pa. Jan. 11, 2005); *Original Appalachian Artworks, Inc. v. J.F. Reichart, Inc.*, 658 F. Supp. 458, 463-64 (E.D. Pa. 1987).  While the plaintiff bears the burden of proving willfulness, *Schiffer*, 2005 WL 67077, at *5, this need not be shown directly; "rather, it may be inferred from defendant's conduct."  *Id.* at *5; *Bly v. Banbury Books, Inc.*, 638 F. Supp. 983, 986 (E.D. Pa. 1986).  Also, willfulness may be shown by the defendant's attempts to hide the infringement from the plaintiff or the court.  *Odegard, Inc. v. Costikyan Classic Carpets, Inc.*, 963 F. Supp. 1328, 1341 (S.D.N.Y. 1997).

14.    CI's infringement of the Webloyalty Sell Page and Banner was indeed willful.  First, Gordon testified that he understood copyright protection.  (Tr. at 122-24.)  Gordon and Edwards each testified that they understood that copying expressive material was wrong.  (Tr. at 122, 124, 176-78.)  The knowledge of these CI principals strongly indicates that the wholesale copying of the Webloyalty Banner and Sell Page was done with knowledge of or reckless disregard for the possibility that this copying would be copyright infringement.

15.    Second, Gordon and Edwards testified repeatedly in depositions and at trial that CI did not copy portions of the Webloyalty Sell Page and the CI Sell Page.  (Tr. at 126-27, 132-33, 140-42, 144-45, 169, 180, 199.)  In the face of the overwhelming evidence of copying, including the CI draft of a sell page containing Webloyalty's telephone number, this testimony appears deliberately deceitful.  That Gordon and Edwards persisted in testifying that no copying took place demonstrates their willingness to deceive and their consciousness of their culpability for infringement.  As I said at the trial:

> It borders … if not crosses the border, into … perjury, to look at a sheet of paper … which contains Webloyalty's phone number in it and assert that that is not an instance of copying.  It's a stunning

> position to take.  I do not understand what motivated that
> testimony here in court today but it is, to put it mildly, incredible.

(Tr. at 216.) As in *Odegard*, the defendant's willingness to hide their infringement strongly suggests that they acted willfully.  963 F. Supp. at 1341.

16.     In short, CI's infringement of the Webloyalty Sell Page and Banner copyrights was willful.  (footnote omitted).

*       *       *

C.      Statutory Damages for Copyright Infringement.

*       *       *

19.     Here, CI's willful copying of the Webloyalty materials and the persistent and willful deception by CI at trial about this copying support the award of significant statutory damages.  These facts unmistakably demonstrate CI's blameworthiness in this case.  Deterring similar conduct is also an important justification for an award, considering CI's persistent deception and lack of remorse.

*       *       *

D.      Attorneys' Fees and Costs.

*       *       *

24.     Here, CI's infringement was willful (*supra* C.I.L. 16).  As I discussed above, the willfulness determination was heavily based on CI's deception about its copying of Webloyalty's materials.  CI's blameworthiness and the need to deter conduct that borders on or constitutes perjury strongly support an award of attorneys' fees and costs in this case.

**L.      USF&G's Denial Of Coverage for the Judgment**

135.    By letter dated December 12, 2005, USF&G denied any duty to indemnify Consumer Innovations for the Judgment (the "Denial Letter").  (A true and correct copy of the denial letter dated December 12, 2005 is attached as Exhibit "28" to App.)

136.    Consistent with USF&G's prior reservation of rights, the Denial Letter set forth three separate bases for the USF&G's denial of any duty to indemnify Consumer Innovations for

the Judgment including: (1) the knowledge of falsity exclusion; (2) the Criminal Acts Exclusion; and (3) Consumer Innovations' breach of the Cooperation Clause.  Id.

## **COUNT I**

### **(Consumer Innovations)**

### (**Exclusion from Coverage for Willful Infringement of Copyright)**

137.    Paragraphs 1 through 136 are incorporated herein by reference as though fully set forth at length.

138.    The concept of fortuity is an indispensable component to, and the fundamental basis of, any form of insurance.

139.    The concept of fortuity recognizes that insurance policies are not issued to cover non-fortuitous losses.

140.    The fortuity doctrine arises from the basic concept that insurance covers risks, rather than losses that were planned, intended, or anticipated by the insured.

141.    When an insured intends to cause damage or injury to property or another person, the insured directly controls the risk of loss.  Insurance for such non-fortuitous damage or injury is against public policy because it eliminates the socially critical deterrent effect of financial responsibility.

142.    It is against public policy to provide insurance for intentional acts.

143.    The knowledge of falsity exclusion of the Policy incorporates the concept of fortuity inherent and the public policy against the provision of insurance for intentional acts as these concepts are applied to advertising injury coverage.

144.    Consumer Innovations has been found guilty of two separate instances of "willful" copyright infringement.

145.    Consumer Innovations acted "willfully" to cause injury and knowingly and intentionally copied language from Webloyalty's Sell Page and its Banner advertisement in violation of the Copyright Act.

146.    Consumer Innovations' infringements were not only "willful," they were done with the intent to cause harm.

147.    Consumer Innovations acted with "knowledge of or reckless disregard for the possibility that this copying would be copyright infringement."

148.    Consumer Innovations acted with a "willingness to hide their infringement," a "persistent and willful deception" and a "consciousness of their culpability for infringement."

149.    The Judgment awarded $50,000 in statutory damages, $226,611.75 in attorneys' fees and $42,727.79 in costs based upon Consumer Innovations' "willful" infringement of the Sell Page and Banner.

150.    The Judgment for "willful" infringement and the consequent statutory damages, attorneys fees' and costs awarded are excluded from coverage under the Policy by the knowledge of falsity exclusion.

**WHEREFORE**, plaintiff, United States Fidelity and Guaranty Company, respectfully requests that this Honorable Court:

(a)    Enter a Declaratory Judgment construing the provisions of the United States Fidelity and Guaranty Company Policy in determining the respective rights and obligations of United States Fidelity and Guaranty Company; and,

(b)    Enter an Order declaring the following:

(i)    that United States Fidelity and Guaranty Company is not obligated to provide insurance coverage to defendant, Consumer Innovations, LLC, under the Policy for the

Judgment entered on behalf of Webloyalty.com and against Consumer Innovations, LLC because "willful" copyright infringement is excluded from coverage under the terms of the Policy;

      (ii)    that the knowledge of falsity exclusion excludes coverage for advertising injury under the Policy for any statutory damages or attorneys' fees and costs incurred by Webloyalty as a result of Consumer Innovations, LLC's "willful" copyright infringement; and

      (iii)    that United States Fidelity and Guaranty Company is entitled to such other relief as this Court deems equitable and just, including investigation costs, legal costs and attorneys' fees.

## COUNT II

### (Consumer Innovations)

### (Exclusion from Coverage for Criminal Acts)

151.    Paragraphs 1 through 150 are incorporated herein by reference as though fully set forth at length.

152.    The Policy excludes coverage for Advertising Injury, "[a]rising out of a criminal act committed by or with the consent of the insured" (the "Criminal Acts Exclusion").

153.    The Criminal Acts Exclusion of the Policy excludes coverage for any act by the insured which consists of the elements necessary for the conviction of a criminal offense.

154.    The Criminal Acts exclusion does not require that Consumer Innovations nor its principals be charged or convicted of a crime for the exclusion to apply.

155.    The essential element of "Criminal Infringement" under Section 17 U.S.C. §506 of the Copyright Act is that the infringement be "willful".

156.    The civil definition of "willful" has been applied to the criminal infringement statute, defining "willful" as a "voluntary, intentional violation of a known legal duty," not a mere intent to copy.

157.    The essential elements of criminal perjury as defined by 18 U.S.C. §1621(1) consist of an (1) oath authorized by law of United States, (2) taken before a competent tribunal, officer or person, and (3) a false statement willfully made as to facts material to the hearing (the "Perjury Statute").

158.    Willful violations of the Copyright Act and the Perjury Statute are punishable by criminal sanctions including fines and up to five years imprisonment.

159.    Consumer Innovations' infringement of the Banner and Sell Page was "willful" and was done with knowledge that it was wrong.

160.    Consumer Innovations acted with a "willingness to hide their infringement", a "persistent and willful deception" and a "consciousness of their culpability for infringement."

161.    The Court in the Delaware action concluded that the testimony of Mr. Gordon and Mr. Edwards constituted "perjury" and that they were "without remorse."

162.    Consumer Innovations' willful copyright infringement of Webloyalty's Sell Page and Banner, followed by its repeated knowingly false testimony at deposition and at trial, constitute all of the elements of a criminal offense under the Copyright Act and/or the Perjury Statute.

163.    The Judgment awarded $50,000 in statutory damages, $226,611.75 in attorneys' fees and $42,727.79 in costs based upon Consumer Innovations' "willful" infringement of the Sell Page and Banner.

164.    In regards to the attorneys' fees and costs, which constitute the majority of the damages awarded, the Court in the Delaware action found, "CI's blameworthiness and the need to deter conduct that borders on or constitutes perjury strongly support an award of attorneys' fees and costs in this case."  (CL at ¶24)

165.    The Judgment for "willful" infringement and the consequent statutory damages, attorneys' fees and costs awarded are excluded from coverage under the Policy by the Criminal Acts Exclusion.

**WHEREFORE**, plaintiff, United States Fidelity and Guaranty Company, respectfully requests that this Honorable Court:

(a)    Enter a Declaratory Judgment construing the provisions of the United States Fidelity and Guaranty Company Policy in determining the respective rights and obligations of United States Fidelity and Guaranty Company; and,

(b)    Enter an Order declaring the following:

(i)    that United States Fidelity and Guaranty Company is not obligated to provide insurance coverage to defendant, Consumer Innovations, LLC, under the Policy for the Judgment entered on behalf of Webloyalty.com and against Consumer Innovations, LLC because coverage is excluded under the criminal acts exclusion of the Policy;

(ii)    that the Criminal Acts Exclusion excludes coverage for advertising injury under the Policy for any statutory damages or attorneys' fees and costs incurred by Webloyalty.com as a result of willful conduct by Consumer Innovations, LLC that constitutes a criminal offense under the Copyright Act and/or the Perjury Statute; and

(iii)    that United States Fidelity and Guaranty Company is entitled to such other relief as this Court deems equitable and just, including investigation costs, legal costs and attorneys' fees.

## COUNT III

### (Consumer Innovations)

### (Preclusion of Coverage for Consumer Innovations' Breach of the Cooperation Clause)

166.    Paragraphs 1 through 165 are incorporated herein by reference as though fully set forth at length.

167.    Under the cooperation clause found at Section IV 2. of the Policy, Consumer Innovations is required to cooperate in the "investigation, settlement and defense" by USF&G of any claim or suit for which coverage is sought under the Policy.

168.    The Policy requires that Consumer Innovations provide a fair and frank disclosure of information reasonably demanded by USF&G to enable it to determine whether there is a genuine defense and to enable them to properly present a defense.

169.    Consumer Innovations failed to produce or advise USF&G of the existence of the first draft of the Consumer Innovations Sell Page which included Webloyalty's phone number.

170.    Consumer Innovations made false or misleading statements to USF&G regarding whether it had actually copied the Webloyalty Sell page.

171.    Consumer Innovations prejudiced USF&G's "investigation, settlement and defense" of the claims brought by Webloyalty as follows:

(a)    Consumer Innovations maintained from the outset of the suit that it did not "copy" Webloyalty's Sell Page;

(b)    Consumer Innovations testified at deposition that it did not "copy" the Sell Page;

(c)    Consumer Innovations testified that while it viewed the Webloyalty Sell Page, it did not print it out;

(d)    Consumer Innovations did not produce the first draft of the Consumer Innovations Sell Page which included Webloyalty's phone number;

(e)     The first draft of the Consumer Innovations Sell Page was first produced in response to a Subpoena served by Webloyalty upon Hungry Mind; and

(f)     When Consumer Innovations was confronted with the first draft of its Sell Page it continued to maintain that it did not "copy" the Sell Page.

172.     USF&G relied on the representations made by Consumer Innovations in responding to settlement demands and in the investigation and defense of the claim made by Webloyalty.

173.     Consumer Innovations has materially breached the cooperation clause and substantially prejudiced USF&G in its "investigation, settlement and defense" of Webloyalty's claim.

174.     Consumer Innovations breached the cooperation clause of the Policy and substantially prejudiced USF&G by entering into the "Settlement Agreement and Covenant Not to Execute" without receiving USF&G's prior approval or consent.

175.     The award of statutory damages and attorneys' fees in the Judgment was primarily based upon the Court's findings of Consumer Innovations' "persistent willful deception." (CL at ¶19).

176.     The Judgment's award of monetary damages and attorneys fees and costs was based substantially, if not exclusively, on Consumer Innovations' "willingness to hide their infringement." (CL at ¶15).

177.     The Court's Findings were based on Consumer Innovations' testimony, in light of the existence of the first draft of the Sell Page which contained Webloyalty's phone number, which the court concluded was "deliberately deceitful." (CL at ¶15).

178.     Any and all coverage that may have been available under the Policy for advertising injury relative to the Judgment entered on behalf of Webloyalty and against

Consumer Innovations for statutory damages, attorneys' fees and costs under the Copyright Act is barred by Consumer Innovations' material breach of the cooperation clause of the Policy.

**WHEREFORE**, plaintiff, United States Fidelity and Guaranty Company, respectfully requests that this Honorable Court:

(a)    Enter a Declaratory Judgment construing the provisions of the United States Fidelity and Guaranty Company Policy in determining the respective rights and obligations of United States Fidelity and Guaranty Company; and,

(b)    Enter an Order declaring the following:

(i)    that United States Fidelity and Guaranty Company is not obligated to provide insurance coverage to defendant, Consumer Innovations, LLC, under the Policy because Consumer Innovations, LLC materially breached one or more conditions of coverage, all to United States Fidelity and Guaranty Company's detriment and prejudice;

(ii)    that any and all coverage available to Consumer Innovations, LLC for the Judgment under the advertising injury portion of the Policy, including coverage for statutory damages, attorneys' fees and costs, is barred by Consumer Innovations, LLC's material breach of the cooperation clause of the Policy; and

(iii)    that United States Fidelity and Guaranty Company is entitled to such other relief as this Court deems equitable and just, including investigation costs, legal costs and attorneys' fees.

**<u>COUNT IV</u>**

**(Consumer Innovations and Webloyalty)**

**(Consumer Innovations' Assignment to Webloyalty is void.)**

179.    Paragraphs 1 through 178 are incorporated herein by reference as though fully set forth at length.

180.    Section F of the Common Policy Conditions that the rights and duties of an insured under the Policy may not be transferred without the prior written consent of USF&G.

181.    Consumer Innovations entered into the "Settlement Agreement and Covenant Not to Execute" without the prior oral or written consent of USF&G.

182.    The Settlement Agreement and Covenant Not to Execute purported to transfer the rights and duties of Consumer Innovations under the Policy.

183.    The Settlement Agreement and Covenant Not to Execute purported to transfer Consumer Innovations rights to insurance coverage to Webloyalty concerning claims for which USF&G had not denied coverage, for which USF&G was providing Consumer Innovations with a vigorous defense and for which it was in the midst of settlement negotiations.

184.    The Settlement Agreement and Covenant Not to Execute is void because it purports to limit USF&G's rights.

185.    The Settlement Agreement and Covenant Not to Compete is void because the circumstances under which it was entered into by Consumer Innovations were in material breach of one or more conditions of the Policy, all to USFG's detriment and prejudice.

**WHEREFORE**, plaintiff, United States Fidelity and Guaranty Company, respectfully requests that this Honorable Court:

(a)    Enter a Declaratory Judgment construing the provisions of the United States Fidelity and Guaranty Company Policy in determining the respective rights and obligations of United States Fidelity and Guaranty Company; and,

(b)    Enter an Order declaring the following:

(i)    that the "Settlement Agreement and Covenant Not to Execute" between Consumer Innovations and Webloyalty.com, Inc. is void because the circumstances under which

it was entered into were in material breach of one or more conditions of the Policy, all to United States Fidelity and Guaranty Company's detriment and prejudice;

(ii)     that the "Settlement Agreement and Covenant Not to Execute" between Consumer Innovations and Webloyalty.com, Inc. is void because it purports to limit United States Fidelity and Guaranty Company's rights; and

(iii)     that United States Fidelity and Guaranty Company is entitled to such other relief as this Court deems equitable and just, including investigation costs, legal costs and attorneys' fees.

## COUNT V

### (Consumer Innovations and Webloyalty)

### (If the Assignment is valid, there is no coverage available to assign.)

186.     Paragraphs 1 through 185 are incorporated herein by reference as though fully set forth at length.

187.     The Judgment for "willful" infringement and the consequent statutory damages, attorneys' fees and costs awarded are excluded from coverage under the Policy.

188.     The Judgment is excluded from coverage under the Policy by the knowledge of falsity exclusion.

189.     The Judgment is excluded from coverage under the Policy by the Criminal Acts Exclusion.

190.     The Judgment is excluded from coverage under the Policy by the breach of the cooperation clause by Consumer Innovations.

191.     USF&G has no duty to indemnify Consumer Innovations for the Judgment.

192.    To the extent the Settlement Agreement and Covenant Not to Execute is valid, there is no coverage available to Consumer Innovations under the Policy for the Judgment that can be transferred or assigned.

193.    Since there is no coverage under the Policy, USF&G has no obligation to pay Webloyalty for the Judgment entered in its favor.

**WHEREFORE**, plaintiff, United States Fidelity and Guaranty Company, respectfully requests that this Honorable Court:

(a)    Enter a Declaratory Judgment construing the provisions of the United States Fidelity and Guaranty Company Policy in determining the respective rights and obligations of United States Fidelity and Guaranty Company; and,

(b)    Enter an Order declaring the following:

(i)    that there is no coverage available to Consumer Innovations for the Judgment under the advertising injury portion of the Policy, including coverage for statutory damages, attorneys' fees and costs;

(ii)    that United States Fidelity and Guaranty Company has no duty to indemnify Consumer Innovations for the Judgment under the advertising injury portion of the Policy, including coverage for statutory damages, attorneys' fees and costs;

(iii)    that United States Fidelity and Guaranty Company has no duty to pay or indemnify Webloyalty.com, Inc., as Consumer Innovations' assignee, for the Judgment including statutory damages, attorneys' fees and costs; and

(iv)    that United States Fidelity and Guaranty Company is entitled to such other relief as this Court deems equitable and just, including investigation costs, legal costs and attorneys' fees.

COZEN O'CONNOR


BY:   /s/ Sean J. Bellew
          Sean J. Bellew
          Suite 1400, Chase Manhattan Centre
          1201 North Market Street
          Wilmington, DE 19801
          (302) 295-2000 or (888) 207-2440
          (302) 295-2013 fax
          Attorneys for Plaintiff,
          United States Fidelity and
          Guaranty Company

Dated:  December 13, 2005