# Exhibit 20

# THE CAVANAGH LAW FIRM
## A Professional Association

R. Corey Hill
(602) 322-4024
Facsimile: (602) 322-4103

March 18, 2005

E-Mail:
CHill@CavanaghLaw.com
www.cavanaghlaw.com
File No. 41789-201

Daria G. Fitzgerald
THE ST. PAUL COMPANIES
167 Cherry St., #424
Milford, CT 06460

Re:   *Webloyalty.com v. Consumer Innovations*
      Claim No. SI 11422

Dear Daria:

I received your letter of March 10, 2005 and offer the following response. First, Consumer Innovations has fully cooperated with its carrier in the defense of this matter and intends to continue doing so. Unfortunately, that defense came with a reservation of rights by the carrier, which placed Consumer Innovations at risk of great personal exposure. Under Arizona law, the carrier's coverage position gives Consumer Innovations certain rights to protect itself from that personal exposure.

That right is confirmed in cases like *USAA v. Morris,* 154 Ariz. 113, 741 P.2d 246 (Ariz. 1987) and *Damron v. Sledge,* 105 Ariz. 151, 460 P.2d 997 (Ariz. 1969). These cases, and many others in Arizona, permit an insured to take appropriate steps to protect itself where an insurer refuses to provide unqualified indemnity and defense under the policy. That includes the right to enter into a settlement agreement or stipulated judgment with the plaintiff if necessary.

In this case Webloyalty is only asking for the right to proceed to a judgment in the case at bar and an assignment of any claims that Consumer Innovations may possess against its carrier. That does not in any way affect the carrier's right to continue challenging coverage under the policy. It merely eliminates the prospect of your insured being exposed to personal liability.

I am enclosing a copy of the draft settlement agreement that will be entered into by the parties. If the carrier is willing to withdraw its reservation of rights and provide unqualified coverage in this matter, Consumer Innovations would agree not to go forward with the agreement. Please let me know within the next five business days whether your company is

CAVPHXDB:1157040.1

Viad Corporate Center • 1850 North Central Avenue, Suite 2400 • Phoenix, Arizona 85004
Telephone 602·322·4000 • Fax 602·322·4100 • Phoenix • Sun City

THE CAVANAGH LAW FIRM

Daria G. Fitzgerald
March 18, 2005
Page 2

willing to waive its reservation of rights. Otherwise, I will have no alternative but to proceed with the deal with Webloyalty.

        Thank you for your consideration.

Sincerely,

R. Corey Hill
For the Firm

RCH:mc

Enclosures

cc:    Daniel A. Griffith, Esq. w/enclosure
        William Johnsen w/enclosure

## SETTLEMENT AGREEMENT AND COVENANT NOT TO EXECUTE

This Settlement Agreement and Covenant Not to Execute is entered into by and among the following parties: (a) Webloyalty.com, Inc. and its officers, agents, employees and assigns (collectively referred to as "Webloyalty"); and (b) Consumer Innovations, L.L.C. and its officers, agents, employees and assigns (collectively referred to as "CI").

I.   **RECITALS:**

A.   Webloyalty initiated a lawsuit against CI in the United States District Court for the District of Delaware, under Cause No. 04-90 (KAJ), alleging copyright infringement and unfair competition.

B.   CI is insured under a liability policy issued by St. Paul Travelers—Policy No. BK01443023.

C.   St. Paul Travelers has issued a reservation of rights in this matter, has declined to provide unqualified defense and indemnity under the policy, and has failed to effectuate a settlement within policy limits to fully protect CI against an adverse judgment in the above lawsuit.

D.   As of the signing of this Agreement, the parties have proceeded through trial in the above cause and await a verdict by the Court.

E.   The parties desire to preserve Webloyalty's ability to seek coverage for their claims under the St. Paul Travelers' policy while also protecting CI from any personal exposure that might result from the Court's verdict and resulting judgment in the above lawsuit.

Therefore, in consideration of the mutual promises and covenants contained in this Agreement and other valuable consideration, the receipt and sufficiency of which is hereby acknowledged by the parties, the parties agree as follows:

II.   **AGREEMENT:**

A.   CI agrees to and hereby does assign to Webloyalty all claims that CI has against its insurer, St. Paul Travelers, under Policy No. BK01443023, including any claims for coverage, breach of contract and bad faith.

B.   CI agrees to allow the pending lawsuit (Cause No. 04-90 (KAJ)) to proceed to judgment. The parties further agree that upon entry of said judgment all litigation and all claims for recovery between the parties related to the issues raised in Cause No. 04-90 (KAJ), and all of Webloyalty's allegations and claims of infringement by CI are fully and finally resolved, subject to paragraph E below.

:1156825-1
CAVPHXDB:1156825.1

C.  Webloyalty hereby agrees to never execute on any judgment entered in Cause No. 04-90 (KAJ) against CI, nor pursue collection in any way against CI, nor lien nor encumber CI's assets, regardless of the enforceability of this Agreement or of the outcome of Webloyalty's pursuit of claims against St. Paul Travelers. Rather, Webloyalty acknowledges and agrees that the sole source of recovery by Webloyalty under any circumstance would be against CI's insurer, St. Paul Travelers, and not against CI personally. Should Webloyalty decide to pursue the above assigned claims, such pursuit would be at Webloyalty's sole risk and expense. The parties acknowledge that CI has not made and does not make any representation or warranty concerning the enforceability of this Agreement or as to the validity or invalidity of the claims being assigned by CI to Webloyalty against St. Paul Travelers.

D.  CI hereby agrees to reasonably cooperate with Webloyalty in pursuit of the assigned claims against St. Paul Travelers, including testifying at deposition or trial if necessary, with Webloyalty agreeing to absorb any costs incurred by CI in assisting with Webloyalty's pursuit of the claims.

E.  Despite the provisions in ¶ C above, the parties agree that Webloyalty retains the right to enforce the terms of any injunctive relief entered against CI by the Court in the above cause, including, if the Court so issues, a Permanent Injunction barring CI, or anyone in active concert and participation with CI, from using Webloyalty's copyrighted materials or any other materials that are confusingly similar to them. If CI violates any such injunction in the future, Webloyalty retains the right to seek damages with respect to any such violation.

F.  The parties agree that the terms and provisions of this Settlement Agreement and Covenant Not to Execute are to remain confidential; however, the underlying Judgment issued in the above cause may remain a matter of public record.

G.  The parties hereby agree not to initiate any further claims, demands, actions, causes of action or other litigation in any forum as to any issues or matters giving rise to or asserted in Cause No. 04-90 (KAJ).

H.  All of the undersigned parties hereby represent that they have authority to sign this Agreement on behalf of themselves and any other person or entity for whom the undersigned parties are signing this Agreement.

I.  The parties understand and acknowledge that none of the parties is making payment of any kind to any of the other parties under this Agreement; nor is any party required to make any payment to any of the other parties. The parties further acknowledge and agree that the sole consideration for this Agreement is the mutual releases, promises, terms and conditions contained herein.

J.  The parties agree that by entering into this Agreement, none of them is making any admission of wrongdoing or liability, said wrongdoing or liability being specifically denied by all parties.

K.  This Agreement shall be governed by, construed and enforced according to the laws of the State of Arizona. Further, any dispute related to this Agreement shall be resolved in Maricopa County, Arizona.

L   This Agreement constitutes the entire agreement among the parties and supersedes any prior negotiations, understandings or agreements entered into by the parties.

M.  The settlement contemplated by this Agreement is not subject to any term or condition not contained in this Agreement. It is expressly understood and agreed that there are no collateral or oral agreements between the parties that are not contained in this Agreement and that no parole evidence shall be applicable or offered by any of the parties in interpreting or enforcing this Agreement. The parties further acknowledge that they are not relying upon any promise, inducement or representation other than those set forth in this Agreement.

N.  This Agreement may not be amended or modified except by a written instrument signed by all of the undersigned parties or their successors in interest. Any condition in this Agreement may be waived by the party entitled to enforce such provision, but only by a written instrument signed by such party or their counsel. No waiver of any provision of this Agreement shall constitute a waiver of any other provision; nor shall such waiver constitute a continuing waiver.

O.  All parties hereby acknowledge that they have been represented by their legal counsel in connection with the negotiation and execution of this Agreement and that they have had the opportunity to have the contents and effect of this Agreement explained to them by their counsel. All of the parties acknowledge that they have read and understood the contents of this Agreement and that they sign it willingly and solely for the consideration stated herein.

P.  Time and strict performance are of the essence of this Agreement.

Q.  All parties acknowledge and agree that if any of them violates this Agreement in any material way, any of the other parties harmed by such violation may pursue

\* \* \*

\* \* \*

litigation to enforce the Agreement, and in any such lawsuit, the prevailing party shall be entitled to recover attorney's fees and costs incurred in pursuit or defense of such litigation.

DATED this ___ day of March, 2005.

WEBLOYALTY.COM, INC.

By_____
Its _____

CONSUMER INNOVATIONS, L.L.C.

By_____
Its _____