# Exhibit 21

**ST PAUL TRAVELERS**

St. Paul Travelers
Technology/Intellectual Property Claim
167 Cherry Street #424
Milford, CT 06460
203-877-0129 TEL
651-310-3344 FAX
www.stpaultravelers.com

April 6, 2004

**VIA FACSIMILE AND U.S. MAIL**

R. Corey Hill
The Cavanaugh Law Firm
Viad Corporate Center
1850 North Central Avenue
Suite 2400
Phoenix, AZ 85004

| | Re: | Insured : | **Consumer Innovations, LLC** |
|---|---|---|---|
| | | Claimant: | Webloyalty.com v. |
| | | Tracking No.: | SI 11422 |
| | | Policy: | BK1443023 |

**United States District Court, District of Delaware**
**Webloyalty.com, Inc. v. Consumer Innovations, LLC**

Dear Corey:

    Please accept this letter as our timely response to your letter of Friday, March 18, 2005, which we received on Tuesday, March 22, 2005. Your letter advised that Consumer Innovations, LLC ("CI") intended to enter into a "Settlement Agreement and Covenant Not to Execute" (the "Agreement") unless United States Fidelity & Guaranty Insurance Company ("USF&G") agreed to waive its reservation of rights and provide unqualified coverage in the above captioned case.

    Your letter requested a response within five business days or by Good Friday, March 25, 2005. Since your letter of the 18th was sent by regular mail, it was not received until Tuesday, March 22nd. Upon receipt, I immediately contacted your office by e-mail to request a reasonable extension of the reply date. When no response was received, I left you a voicemail requesting a reasonable extension on March 23rd.

    Your letter of March 18, 2005 states that it is in response to our letter of March 10, 2005. In that letter, USF&G reminded CI of certain Policy Conditions including the requirement that CI "cooperate with us in the investigation, settlement or defense of the claim or suit", obtain our written consent to an assignment or transfer of its rights or duties under the policy and obtain our written agreement to any settlement and release of liability. Your letter of March 18th enclosed your "draft" Agreement with Webloyalty.com, Inc. ("Webloyalty") and made the following points: 1) CI has and will continue to fully cooperate with the defense of the case; 2) since USF&G has defended under a reservations of rights CI has been placed at risk of personal exposure; 3) under

Arizona law, CI can take steps to protect itself including entering into a settlement agreement with the plaintiff if necessary; and 4) CI will enter the Agreement unless USF&G withdraws its reservation of rights.

By way of explanation of the Agreement, you advise that "Webloyalty is only asking for the right to proceed to a judgment in the case at bar and an assignment of any claims that Consumer Innovations may possess against its carrier. That does not in any way affect the carrier's right to continue challenging coverage under the policy. It merely eliminates the prospect of your insured being exposed to personal liability".

We note that while the Agreement proffered is entitled a "Settlement Agreement and Covenant Not to Execute", in effect, it does not "settle" the case. It merely provides for an assignment of CI's rights, if any, under USF&G's Policy including any claims for coverage, breach of contract or bad faith once a judgment is rendered by the Court and Webloyalty's agreement not to execute any judgment against CI personally.[1] The Agreement also provides that upon the entry of judgment, "all litigation and all claims for recovery between the parties related to the issues raised ... and all of Webloyalty's allegations and claims of infringement by CI are fully and finally resolved".

While the Agreement "allows" the suit to proceed to judgment, the case is proceeding to judgment with or without the Agreement. As you know, a bench trial before Judge Jordan was held on February 22, 2005. At the close of the evidence, Judge Jordan found "actual copying" and requested post trial briefs on the question of "willfulness", damages and legal arguments concerning protectability.(See N.T. 216-217) Proposed Findings of Fact and Conclusions of Law were filed by both sides on March 16, 2005. Webloyalty, as the prevailing party, also filed an application for attorney's fees. Responsive briefs were filed March 30, 2005. On April 1, 2005, Webloyalty requested an opportunity to file a reply to CI's opposition to the application for attorney's fees and attached a copy of that reply. We expect that since the briefing is complete that the Court will enter its judgment without the benefit of oral argument.

First, in response to your request, USF&G is not willing to waive or withdraw its reservations of rights with regard to the defense and indemnity of the above captioned case. An insurer with a good faith potential coverage defense may appropriately perform its contractual duty to defend while simultaneously reserving its right to later assert the defense. Such is the case here. USF&G has vigorously defended CI from all claims asserted against it by Webloyalty despite the reservation of rights. As we previously advised, "willful" infringement and damages resulting therefrom, among other things, are not covered under the policy. The question of "willfulness" has not yet been resolved by the Court, but has been fully briefed for the Court's consideration.

Second, USF&G has been and will continue to provide a defense in the case under its reservation of rights which includes not only the payment of attorney's fees for Marshall Dennehy but also for those attorney's fees incurred by The Cavanaugh Firm.

---

[1] We note that while the policy was issued by USF&G, the Agreement purports to assign the rights to a Policy issued by St. Paul Travelers.

We expect and you have confirmed that CI will continue to fully cooperate with USF&G in aggressively defending the issues outstanding including the proposed findings of fact and conclusions of law and Webloyalty's application for attorneys' fees and costs which both relate to the question of "willfulness", the assessment of damages and protectability.

Third, USF&G recognizes that many jurisdictions allow an insured to assign its coverage claim under the policy to a third party and that insurers may not unreasonably withhold its consent to such an assignment. Given that CI faces personal exposure in the case at bar and that USF&G has reserved its rights to deny coverage, USF&F does not oppose CI's assignment of its rights, if any, that it may have to coverage under its policy and to Webloyalty's agreement not to execute any judgment against CI personally.

USF&G does not however, agree to or consider itself bound to the terms of the "draft" Agreement including but not limited to the choice of law and choice of venue provisions. In addition, notwithstanding any law which may permit the assignment of an insured's coverage claims, USF&G objects to CI's assignment of any alleged claim for bad faith. USF&G has acted in the utmost good faith in this matter and will continue to do so. There is no basis for the assignment of a bad faith claim which does not exist and this provision should be deleted from the Agreement.

Furthermore, USF&G is not bound by CI's apparent willingness to forego its rights to challenge or appeal the judgment or award entered by the Court. USF&G retains the right to challenge and/or intervene in post-judgment proceedings or otherwise, as may be necessary to preserve and protect its rights relating to the judgment or award.

Finally, USFG reserves its right to assert all applicable coverage defenses to any claims that are validly assigned by CI and, to the extent that the claims are covered under the Policy, to assert that the claimed damages are not reasonable under the circumstances. If you have any other information that you believe may affect our coverage analysis or if you have any questions about the substance of this letter, please feel free to contact me.

Sincerely,

*Daria D. Fitzgerald*

UNITED STATES FIDELITY AND CASUALTY COMPANY
Daria G. Fitzgerald

cc: Bill Johnson, Consumer Innovations, LLC

3