# Exhibit 22

# THE CAVANAGH LAW FIRM
### A Professional Association

R. Corey Hill
(602) 322-4024
Facsimile: (602) 322-4103

April 12, 2005

E-Mail:
CHill@CavanaghLaw.com
www.cavanaghlaw.com
File No. 41789-200

Daria G. Fitzgerald
THE ST. PAUL COMPANIES
167 Cherry St., #424
Milford, CT 06460

     Re: *Webloyalty.com v. Consumer Innovations*
        **Claim No. SI 11422**

Dear Daria:

   Please be advised that Consumer Innovations has assigned to Webloyalty all of CI's claims for coverage under Policy No. BK01443023 (the "Policy") and for breach of the Policy related to the Delaware lawsuit including, but not limited to, claims arising from or related to the claims raised in the Delaware Action and any claims for your bad faith (including bad faith failure to settle). I attach a copy of the Agreement entered into by the parties.

   You are hereby authorized and directed to make any payments or remittances of proceeds with respect to any claims under or relating to issues and claims raised in the above-referenced lawsuit directed to Webloyalty. Your contact at Webloyalty is Steven Lieberman, Esq.; Rothwell, Figg, Ernst & Manbeck, 1425 K Street, N.W., #800, Washington, D.C. 20005. No further payments or remittances under the Policy with respect to the claims in the above-referenced lawsuit should be made to CI other than whatever payments you are making with respect to the defense of the lawsuit brought by Webloyalty.

                    Sincerely,

                    R. Corey Hill
                    For the Firm

RCH:mc

Enclosure
cc: Steven Lieberman, Esq.
   William Johnsen

CAVPHXDB:1162462.1

# SETTLEMENT AGREEMENT AND COVENANT NOT TO EXECUTE

This Settlement Agreement and Covenant Not to Execute is entered into by and among the following parties: (a) Webloyalty.com, Inc. and its officers, agents, employees and assigns (collectively referred to as "Webloyalty"); and (b) Consumer Innovations, L.L.C. and its officers, agents, employees and assigns (collectively referred to as "CI").

## I.   RECITALS:

A. Webloyalty initiated a lawsuit against CI in the United States District Court for the District of Delaware, under Cause No. 04-90 (KAJ), alleging copyright infringement and unfair competition (the "Delaware Action").

B. CI is insured under a liability policy, Policy No. BK01443023 (the "Policy") issued by St. Paul Travelers (the "Insurer").

C. Insurer has issued a reservation of rights in this matter, has declined to provide unqualified defense and indemnity under the policy, and has failed to effectuate a settlement within policy limits to fully protect CI against an adverse judgment in the Delaware Action.

D. As of the signing of this Agreement, the parties have proceeded through trial in the above cause and await a judgment by the Court.

E. The parties desire to preserve Webloyalty's ability to seek coverage for their claims under the Policy while also protecting CI from any financial exposure that might result from the Court's judgment in the Delaware Action.

Therefore, in consideration of the mutual promises and covenants contained in this Agreement and other valuable consideration, the receipt and sufficiency of which is hereby acknowledged by the parties, the parties agree as follows:

## II.   AGREEMENT:

A. <u>Assignment of Insurance Claims</u>

1. CI agrees to and hereby does assign, transfer and set over absolutely to Webloyalty all of CI's claims for coverage under the Policy and breach of the Policy, including any claims for Insurer's bad faith (including bad faith failure to settle), related to the issues and claims raised in the Delaware Action.

2. CI hereby authorizes and directs Insurer to pay and remit all proceeds of any claims arising under or relating to issues and claims raised in the Delaware Action directly to Webloyalty, or to Webloyalty's successors or assigns. In the event that

notwithstanding this provision, CI receives any such proceeds, CI acknowledges and agrees that it will have no equitable interest in such proceeds and that such proceeds shall be held in trust for the exclusive benefit and use of Webloyalty, or its successors or assigns, and shall immediately be paid to Webloyalty.

3. Notwithstanding anything in the Policy or herein to the contrary, Webloyalty is not hereby assigned, and does not hereby assume, any obligation or liability of CI under the Policy.

4. CI shall provide written notice to Insurer in a form reasonably satisfactory to Webloyalty of this Settlement Agreement and Covenant Not To Execute within five (5) business days of the date hereof.

B. CI agrees to allow the Delaware Action to proceed to judgment and not to seek a stay of the Delaware Action or take other action to delay or prevent entry of final judgment in the Delaware Action. The parties further agree that subject to the provisions of Section II(I), upon entry of said judgment all litigation and all claims for recovery between the parties related to the issues raised in the Delaware Action are fully and finally resolved.

C. Until such time as a final judgment has been entered in the Delaware Action: (a) CI agrees not to petition or apply to any tribunal for, or consent to, the appointment of, or taking possession by, a trustee, receiver, custodian, liquidator or similar official of CI, or of any substantial part of the assets of CI, or commence a voluntary case under the bankruptcy law of the United States, or under the bankruptcy law of any other jurisdiction, and (b) in the event that any such petition or application is filed, or any such proceedings are commenced against CI, CI agrees not to do or undertake any act indicating its approval thereof, consent thereto or acquiescence therein.

D. This agreement shall be voidable at the option of Webloyalty without further notice to CI if one or more of the following events of default occurs (collectively, the "Default Events" and each a "Default Event"):

1. CI requests a stay of the Delaware Action or takes any action to prevent entry of a final judgment in the Delaware Action;

2. The entry of any stay of proceedings in the Delaware Action which has not been previously consented to in writing by Webloyalty;

3. Until such time as a final judgment has been entered in the Delaware Action, CI petitions or applies to any tribunal for, or consents to, the appointment of, or taking possession by, a trustee, receiver, custodian, liquidator or similar official of CI, or of any substantial part of the assets of CI, or commences a voluntary case under the bankruptcy law of the United States, or under the bankruptcy law of any other jurisdiction;

4.  Until such time as a final judgment has been entered in the Delaware Action, any such petition or application is filed, or any such proceedings are commenced, against CI and CI by any act indicates its approval thereof, consent thereto or acquiescence therein, or any order, judgment or decree is entered appointing any such trustee, receiver, custodian, liquidator or similar official, or approving the petition in any such proceedings and such order, judgment or decree remains unstayed and in effect for more than 45 days (the events described in this clause D.2 and in clause D.1 above are collectively referred to herein as "Bankruptcy Events");

5.  If following the occurrence of a Bankruptcy Event, CI seeks the rejection of this Agreement pursuant to section 365(a) of Title 11 of the United States Code (the "Bankruptcy Code") as an executory contract, or supports any motion made by a third party seeking to compel the rejection of this Agreement as an executory contract or for any other reason; or

6.  If following the occurrence of a Bankruptcy Event, CI opposes any motion or application by Webloyalty for relief from the automatic stay under section 362 of the Bankruptcy Code in order to obtain entry of a final judgment in the Delaware Action.

E.  CI acknowledges and agrees that following the occurrence of any Bankruptcy Event "cause" will be present under section 362(d) of the Bankruptcy Code or any similar stay which may apply to grant Webloyalty relief from such stay to litigate the Delaware Action to a final judgment (or any appeal therefrom) and, if and to the extent such stay applies, to pursue the rights, claims and causes of action against Insurer assigned to Webloyalty under this Agreement.

F.  CI acknowledges and agrees that its assignment of its rights and claims under the Policy as stated herein and other promises and commitments hereunder have been made and given in consideration of reasonably equivalent value provided by Webloyalty, including without limitation Webloyalty's agreement not to enforce the monetary component of any final judgment entered in the Delaware Action against CI, in all events subject to and in accordance with the terms and conditions of this Agreement.

G.  Assuming no Default Event shall have occurred prior to the entry of final judgment in the Delaware Action, Webloyalty hereby agrees to never execute on any judgment entered in the Delaware Action against CI, nor pursue collection in any way against CI, nor lien nor encumber CI's assets, regardless of the enforceability of this Agreement or of the outcome of Webloyalty's pursuit of claims against Insurer. Rather, Webloyalty acknowledges and agrees that the sole source of recovery by Webloyalty under any circumstance would be against Insurer, and not against CI personally. Should Webloyalty decide to pursue the above

assigned claims, such pursuit would be at Webloyalty's sole risk and expense. The parties acknowledge that CI has not made and does not make any representation or warranty concerning the enforceability of this Agreement or as to the validity or invalidity of the claims being assigned by CI to Webloyalty against Insurer.

H. CI hereby agrees to reasonably cooperate with Webloyalty in pursuit of the assigned claims against Insurer, including, but no limited to, testifying at deposition or trial if necessary, providing Webloyalty with all documents relating to and constituting communications between CI and Insurer relating to the Delaware Action and providing information to Webloyalty necessary for the pursuit of the assigned claims, with Webloyalty agreeing to absorb any out-of-pocket costs incurred by CI at Webloyalty's request in assisting with Webloyalty's pursuit of the claims.

I. Notwithstanding the provisions in ¶ G above, the parties agree that Webloyalty retains the right to enforce the terms of any injunctive relief entered against CI by the Court in the above cause, including, if the Court so issues, a Permanent Injunction barring CI, or anyone in active concert and participation with CI, from using Webloyalty's copyrighted materials or any other materials that are confusingly similar to them. If CI violates any such injunction in the future, Webloyalty retains the right to seek damages with respect to any such violation.

J. The parties agree that Exhibit A to this Agreement is to remain confidential.

K. The parties hereby agree not to initiate any further claims, demands, actions, causes of action or other litigation against each other in any forum as to any issues or matters giving rise to or asserted in the Delaware Action, other than a claim for breach of this Agreement.

L. All of the undersigned parties hereby represent that they have authority to sign this Agreement on behalf of themselves and any other person or entity for whom the undersigned parties are signing this Agreement.

M. CI represents and warrants that the financial statements attached as Exhibit A are the most recent statements prepared by CI, are true and correct and present fairly the financial position and results of operations of CI, as of the date set forth on the statements. In the event that this representation and warranty is incorrect, Section II (G) and (K) shall become void *ab initio* and Webloyalty shall be entitled to pursue enforcement of any judgment entered against CI. The representations and warranties stated herein shall expire and no longer be actionable in any way one year from the date of this Agreement.

N. This Agreement shall be governed by, construed and enforced according to the laws of the State where litigation is commenced to resolve any dispute

concerning this Agreement. Such litigation may only be filed in the state or federal courts of Delaware.

O. This Agreement constitutes the entire agreement among the parties and supersedes any prior negotiations, understandings or agreements entered into by the parties.

P. The settlement contemplated by this Agreement is not subject to any term or condition not contained in this Agreement. It is expressly understood and agreed that there are no collateral or oral agreements between the parties that are not contained in this Agreement and that no parole evidence shall be applicable or offered by any of the parties in interpreting or enforcing this Agreement. The parties further acknowledge that they are not relying upon any promise, inducement or representation other than those set forth in this Agreement.

Q. This Agreement may not be amended or modified except by a written instrument signed by all of the undersigned parties or their successors in interest. Any condition in this Agreement may be waived by the party entitled to enforce such provision, but only by a written instrument signed by such party or their counsel. No waiver of any provision of this Agreement shall constitute a waiver of any other provision; nor shall such waiver constitute a continuing waiver.

R. All parties hereby acknowledge that they have been represented by their legal counsel in connection with the negotiation and execution of this Agreement and that they have had the opportunity to have the contents and effect of this Agreement explained to them by their counsel. All of the parties acknowledge that they have read and understood the contents of this Agreement and that they sign it willingly and solely for the consideration stated herein.

S. All parties acknowledge and agree that if any of them violates this Agreement in any material way, any of the other parties harmed by such violation may pursue

\* \* \*

\* \* \*

litigation to enforce the Agreement, and in any such lawsuit, the prevailing party shall be entitled to recover attorney's fees and costs incurred in pursuit or defense of such litigation.

      T.    The parties agree that this Agreement may be signed in counterparts and is fully enforceable in such form.

DATED this ___ day of March, 2005.

WEBLOYALTY.COM, INC.

By _____
Its ____CEO____

CONSUMER INNOVATIONS, L.L.C.

By _____
Its _____

litigation to enforce the Agreement, and in any such lawsuit, the prevailing party shall be entitled to recover attorney's fees and costs incurred in pursuit or defense of such litigation.

   T. The parties agree that this Agreement may be signed in counterparts and is fully enforceable in such form.

DATED this 30th day of March, 2005.

WEBLOYALTY.COM, INC.

By_____
Its _____

CONSUMER INNOVATIONS, L.L.C.

By _[signature]_____
Its _Manager_____

:1159835-1
CAVPHXDB:1159835.1

6

# EXHIBIT

# A

10:16 AM
03/29/05
Accrual Basis

# Consumer Innovations, LLC
## Profit & Loss
### January 2005

|  | Jan 05 |
|---|---:|
| **Ordinary Income/Expense** |  |
| **Income** |  |
| 4000 · Member Fees | 78,900.60 |
| 4001 · Deferred Membership Revenues | 754.07 |
| 4005 · Refunded Membership Fees | -7,069.39 |
| **Total Income** | 72,585.28 |
| **Cost of Goods Sold** |  |
| 5000 · Fullfillment Kit Cost | 2,917.88 |
| 5005 · Partnership Bounty Fees | 25,789.00 |
| 5010 · Customer Service | 5,074.78 |
| 5015 · Member Benefit Fees | 0.00 |
| **Total COGS** | 33,781.66 |
| **Gross Profit** | 38,803.62 |
| **Expense** |  |
| 6100 · IT costs |  |
| 6101 · Hosting and Maintenance | 1,960.00 |
| 6102 · Database management fees | 837.50 |
| Total 6100 · IT costs | 2,797.50 |
| 6150 · Depreciation Expense | 609.51 |
| 6180 · Insurance | 40.00 |
| 6200 · Bank Related Charges |  |
| 6205 · Bank Service Charges | 5,644.12 |
| 6200 · Bank Related Charges - Other | 3,946.39 |
| Total 6200 · Bank Related Charges | 9,590.51 |
| 6250 · Postage and Delivery | 101.78 |
| 6270 · Professional Fees |  |
| 6280 · Legal Fees | 149.00 |
| Total 6270 · Professional Fees | 149.00 |
| 6290 · Rent | 3,164.16 |
| 6350 · Travel & Ent |  |
| 6360 · Entertainment | 204.31 |
| 6370 · Meals | 165.40 |
| Total 6350 · Travel & Ent | 369.71 |
| 6390 · Utilities |  |
| 6410 · Water | 10.78 |
| 6421 · Long Distance Telephone | 1,404.53 |
| Total 6390 · Utilities | 1,415.31 |
| 6560 · Payroll |  |
| 6561 · Payroll Expenses | 24,436.66 |
| 6562 · Withholding Expenses | 787.31 |
| Total 6560 · Payroll | 25,223.97 |
| **Total Expense** | 43,521.45 |
| **Net Ordinary Income** | -4,717.83 |
| **Other Income/Expense** |  |
| **Other Expense** |  |
| 8010 · Other Expenses | 22.94 |
| **Total Other Expense** | 22.94 |
| **Net Other Income** | -22.94 |
| **Net Income** | -4,740.77 |

Page 1

10:16 AM
03/29/05
Accrual Basis

# Consumer Innovations, LLC
## Balance Sheet
### As of January 31, 2005

|  | Jan 31, 05 |
|---|---:|
| **ASSETS** | |
| **Current Assets** | |
| **Checking/Savings** | |
| 1000 · Checking Account - Wells Fargo | 27,591.63 |
| 1005 · Merchant Account Reserve | 49,459.72 |
| **Total Checking/Savings** | 77,051.35 |
| **Other Current Assets** | |
| 1120 · Inventory Asset | |
| 1121 · $10 Gas Card | 340.95 |
| 1122 · Shower Radio | 19.80 |
| 1123 · CD PLAYER | 1,146.58 |
| 1124 · · Companion Airline Ticket | 1,637.35 |
| 1130 · · Health Fullfillment Kit | 5,960.15 |
| 1135 · · Auto Fullfillment Kit | 20,611.73 |
| 1140 · · Travel Fullfillment Kit | 13,152.08 |
| **Total 1120 · Inventory Asset** | 42,868.62 |
| **Total Other Current Assets** | 42,868.62 |
| **Total Current Assets** | 119,919.97 |
| **Fixed Assets** | |
| 1300 · Website | 19,031.25 |
| 1301 · Accumulated Amortizaion - Websi | -10,541.33 |
| 1310 · Furniture and Fixtures | 4,824.29 |
| 1311 · Accum Depreciation - F&F | -987.89 |
| 1312 · Equipment | 6,189.28 |
| 1313 · Accum Depreciation - Equipment | -1,067.34 |
| **Total Fixed Assets** | 17,448.26 |
| **Other Assets** | |
| 1500 · Deposits | 13,660.00 |
| 1950 · Trademarks and Patents | 1,340.00 |
| **Total Other Assets** | 15,000.00 |
| **TOTAL ASSETS** | 152,368.23 |
| **LIABILITIES & EQUITY** | |
| **Liabilities** | |
| **Current Liabilities** | |
| **Accounts Payable** | |
| 2000 · Accounts Payable | 9,246.67 |
| **Total Accounts Payable** | 9,246.67 |
| **Other Current Liabilities** | |
| 2010 · Reserve for Chgbcks | 5,000.00 |
| 2001 · Accrued Expenses | 13,000.00 |
| 2101 · Fed Inc Tax Withheld | 5,217.62 |
| 2102 · Social Security Tax Withheld ER | 1,523.63 |
| 2103 · Social Security Tax Withheld EE | 1,523.59 |
| 2104 · Medicare Withhold ER | 447.82 |
| 2105 · Medicare Withheld EE | 447.74 |
| 2106 · State Tax Withheld | 1,907.88 |
| 2500 · Deferred Revenue | 113,004.97 |
| **Total Other Current Liabilities** | 142,073.25 |
| **Total Current Liabilities** | 151,319.92 |
| **Long Term Liabilities** | |
| 2200 · Line of Credit - Payable | 842,699.09 |
| **Total Long Term Liabilities** | 842,699.09 |
| **Total Liabilities** | 994,019.01 |

Page 1

03/29/05  11:44 FAX 3224103            THE CAVANAGH LAW FIRM                    ☒004
                                                                                P. 04
MAR-29-2005 TUE 10:34 AM                    FAX NO.

|  | Consumer Innovations, LLC | |
|--|--|--|
| 10:16 AM | **Balance Sheet** | |
| 03/29/05 | As of January 31, 2005 | |
| Accrual Basis | | |

|  | Jan 31, 05 |
|--|--|
| **Equity** | |
| 2900 · Retained Earnings | -1,236,910.01 |
| 3000 · Opening Bal Equity | 400,000.00 |
| Net Income | -4,740.77 |
| **Total Equity** | -841,650.78 |
| **TOTAL LIABILITIES & EQUITY** | **152,368.23** |

Page 2