# Exhibit 28


**ST PAUL**
**TRAVELERS**

St. Paul Travelers
Technology/Intellectual Property Claim
167 Cherry Street #424
Milford, CT 06460
203-877-0129 TEL
651-310-3344 FAX
www.stpaultravelers.com

December 12, 2005

**VIA FACSIMLE (602-322-4103) AND U.S. MAIL**

R. Corey Hill, Esquire
The Cavanaugh Law Firm
Viad Corporate Center
1850 North Central Avenue
Suite 2400
Phoenix, AZ 85004

## DECLINATION OF COVERAGE/DUTY TO INDEMNIFY

Re:  Insured:        Consumer Innovations, LLC
     Claimant:       Webloyalty.com, Inc.
     Tracking No.:   SI 11422
     Policy No.:     BK01443023 (the "Policy")

United States District Court, District of Delaware
Webloyalty.com, Inc. v. Consumer Innovations, LLC
Case No. 04-90 (KAJ)

Dear Mr. Hill:

On October 6, 2005, Judge Kent Jordan of the United States District Court for the District of Delaware entered judgment ("Judgment") in favor of Webloyalty.com, Inc. ("Webloyalty") and against Consumer Innovations, LLC ("CI") for willful infringement of two copyrights. I apologize that I have been unable to address the Judgment until now due to the ongoing critical illness of a close family member, but I do so now.

Please allow this letter to serve as a supplement to our letters to CI dated February 12, 2004, March 10, 2005, April 6, 2005, and May 6, 2005 which are incorporated herein by reference. United States Fidelity & Guaranty Company ("USF&G") has now carefully reviewed the Judgment, Judge Jordan's Findings of Fact and Conclusions of Law and the terms and conditions of the liability policy of insurance # BK01443023 (the "Policy"). Consistent with our prior reservation of rights, USF&G has determined that based upon the Court's findings and judgment that the Policy does not provide coverage for the judgment and USF&G has no duty to indemnify CI (or pay Webloyalty as CI's assignee) under the Policy for the Judgment.

R. Corey Hill, Esquire
December 12, 2005
Page 2

---

1. **THE JUDGMENT.**

At the trial in the above captioned matter in February 2005, Judge Jordan held that CI had "actually copied" material subject to a valid copyright held by Webloyalty. However, the Court did not rule on whether the copyright infringement was willful or non-willful. In its Judgment of October 2005, Judge Jordan has concluded that CI was guilty of willful infringement of two separate copyrights. The Judgment entered totals $319,339.54, consisting of $25,000 on Webloyalty's claim for willful copyright infringement of the Sell Page, $25,000 on Webloyalty's claim for willful copyright infringement of the Banner, $226,611.75 in statutory attorneys' fees and $42,727.79 in costs. The Judgment also includes a permanent injunction against CI from using the Sell Page or Banner or any other substantially similar material. The Court entered judgment in favor of CI on Webloyalty's claim for trade dress infringement under the Lanham Act.

The Judgment is based on the Post-Trial Findings of Facts and Conclusions of Law made by the Court on September 26, 2005. We enclose a copy of the Judgment and the Post-Trial Findings for your convenience. In particular, the Court made the following Findings of Fact:

> 7. Matthew Gordon, Director of Interactive Marketing at CI (Tr. at 151), testified that he created a CI sell page for use with the Walter Drake confirmation page in December 2003 and January 2004. (Tr. at 126).
>
> 8. On December 16, 2003, Gordon made an online purchase from Walter Drake, clicked on the Webloyalty Banner, examined the Webloyalty Sell Page, and joined Webloyalty's Reservation Rewards program. (Tr. at 53, 122-23; PTX 36.)
>
> 9. On December 17, 2003, Gordon sent an e-mail to Hungry Mind, a company that designs internet sites, attaching a first draft of text for a CI Sell Page. (Tr. at 130; PTX 43.) This draft was nearly identical to Webloyalty's Sell Page, except for seven paragraphs which describes the particular items of the CI Traveler Innovations reward program (which differed from the terms of the Webloyalty's program). (Tr. at 121-22; PTX 43A). Within the identical language, the CI draft sell page actually included Webloyalty's customer service telephone number in the following sentence: "If, at any time, you are not completely satisfied during your trial [membership in the program] or thereafter simply call Traveler Innovations toll free at 1-888-688-5995 to let us know you wish to cancel ...." (Tr. at 133; PTX 43A).
>
> 10. Before commencing its sell page to the Walter Drake site on January 15, 2004, CI generated additional drafts. In one intermediate draft of January 13, 2004, the language on CI's sell page contained slight differences from the Webloyalty Sell Page. (PTX 44.) But the final version that was connected to the Walter Drake site on January 15 (PTX 3) was revised in a manner that made the text in certain portions virtually identical to the Webloyalty Sell Page (PTX 2).

R. Corey Hill, Esquire
December 12, 2005
Page 3

---

(Tr. at 139-45). The final CI Sell Page was connected with the Walter Drake site for approximately one month – from January 15 to February 16, 2004. (Tr. at 203.)

11. To connect Walter Drake customers to the CI Sell Page, CI used a banner (PTX 7) that is identical to the Webloyalty Banner except that "Reservation Rewards" was replaced by "Traveler Innovations."

12. Gordon and Jason Edwards (CI's President) testified that, as of December 2003, they knew that copying was wrong. (Tr. at 122, 124, 176-78.) Gordon understood the meaning of the copyright symbol. (Tr. at 122-24.)

Based upon these Findings of Fact, the Court made the following Conclusions of Law in regards to its conclusions that CI's copyright infringements were "willful", and CI's conduct warranted the award of significant statutory damages and attorneys fees and costs:

B.  Willfulness.

\*    \*    \*

13. Copyright infringement is willful when the defendant "actually knew it was infringing the plaintiff's copyrights or recklessly disregarded that possibility." *Schiffer Publ'g, Ltd. v. Chronicle Books, LLC*, No. CIV.A.03-4962, 2005 WL 67077, at \*5 (E.D. Pa. Jan. 11, 2005); *Original Appalachian Artworks, Inc. v. J.F. Reichart, Inc.*, 658 F. Supp. 458, 463-64 (E.D. Pa. 1987). While the plaintiff bears the burden of proving willfulness, *Schiffer*, 2005 WL 67077, at \*5, this need not be shown directly; "rather, it may be inferred from defendant's conduct." *Id.* at \*5; *Bly v. Banbury Books, Inc.*, 638 F. Supp. 983, 986 (E.D. Pa. 1986). Also, willfulness may be shown by the defendant's attempts to hide the infringement from the plaintiff or the court. *Odegard, Inc. v. Costikyan Classic Carpets, Inc.*, 963 F. Supp. 1328, 1341 (S.D.N.Y. 1997).

14. CI's infringement of the Webloyalty Sell Page and Banner was indeed willful. First, Gordon testified that he understood copyright protection. (Tr. at 122-24.) Gordon and Edwards each testified that they understood that copying expressive material was wrong. (Tr. at 122, 124, 176-78.) The knowledge of these CI principals strongly indicates that the wholesale copying of the Webloyalty Banner and Sell Page was done with knowledge of or reckless disregard for the possibility that this copying would be copyright infringement.

15. Second, Gordon and Edwards testified repeatedly in depositions and at trial that CI did not copy portions of the Webloyalty Sell Page in the CI Sell Page. (Tr. at 126-27, 132-33, 140-42, 144-45, 169, 180, 199.) In the face of the overwhelming evidence of copying, including the CI draft of a sell page containing Webloyalty's telephone number, this testimony appears deliberately

R. Corey Hill, Esquire
December 12, 2005
Page 4

---

deceitful. That Gordon and Edwards persisted in testifying that no copying took place demonstrates their willingness to deceive and their consciousness of their culpability for infringement. As I said at the trial:

> It borders .. if not crosses the border, into ... perjury, to look at a sheet of paper ... which contains Webloyalty's phone number in it and assert that that is not an instance of copying. It's a stunning position to take. I do not understand what motivated that testimony here in court today but it is, to put it mildly, incredible.

(Tr. at 216.) As in *Odegard*, the defendant's willingness to hide their infringement strongly suggests that they acted willfully. 963 F. Supp. at 1341.

16. In short, CI's infringement of the Webloyalty Sell Page and Banner copyrights was willful. (footnote omitted).

C.      Statutory Damages for Copyright Infringement.

\*      \*      \*

19. Here, CI's willful copying of the Webloyalty materials and the persistent and willful deception by CI at trial about this copying support the award of significant statutory damages. These facts unmistakably demonstrate CI's blameworthiness in this case. Deterring similar conduct is also an important justification for an award, considering CI's persistent deception and lack of remorse.

\*      \*      \*

D.      Attorneys' Fees and Costs.

\*      \*      \*

24. Here, CI's infringement was willful (*supra* C.I.L. 16). As I discussed above, the willfulness determination was heavily based on CI's deception about its copying of Webloyalty's materials. CI's blameworthiness and the need to deter conduct that borders on or constitutes perjury strongly support an award of attorneys' fees and costs in this case.

**2.      USF&G'S ACCEPTANCE OF ITS DUTY TO DEFEND.**

USF&G issued a standard general comprehensive liability Policy to the named insured, Consumer Innovations, LLC. The Policy was in effect from May 14, 2003 through May 14, 2004. The Policy has a $1,000,000 per occurrence and advertising injury liability limit with no deductible. The Policy includes a Liability Coverage Part which includes coverage for "Advertising Injury" as follows:

4

R. Corey Hill, Esquire
December 12, 2005
Page 5

### SECTION I – COVERAGE

**A.**  Liability

1.  Insuring Agreement

    a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage", "personal injury" or "advertising injury" to which this insurance applies.

    \*   \*   \*

    b.  This insurance applies to:

    \*   \*   \*

    (3)  "Advertising Injury" caused by an offense committed in the course of "advertising" your goods, products or services that:

    (a)  Was first committed in the "coverage territory"; and

    (b)  Was committed during the policy period.

Section V of the Policy defines "Advertising" and "Advertising Injury" as follows:

### SECTION V - DEFINITIONS

1.  **"Advertising"** means attracting the attention of others by any means for the purpose of seeking customers or supporters or increasing sales or business.

2.  **"Advertising injury"** means injury arising out of one or more of the following offenses:

    \*   \*   \*

    c.  The use of another's advertising idea in your "advertising";

    d.  Infringement of another's copyright, trade dress or slogan in your "advertising."

Webloyalty's original Complaint was filed against CI on February 9, 2004. The Complaint alleged that, beginning on or about January 15, 2004, without license, permission, or consent, CI copied and published on the internet at the Walter Drake website, substantial portions of Webloyalty's copyrighted Sell Page text that was protected by Copyright Registration No. TX5842219. *See* Complaint at ¶¶12, 14, 19, 23.

5

R. Corey Hill, Esquire
December 12, 2005
Page 6

---

The Complaint also alleged that CI had copied and published "the look and feel" of Webloyalty's internet advertising Banner. *See* Complaint at ¶¶ 15, 29. The Complaint alleged copyright infringement pursuant to the Copyright Act, 17 U.S.C. § 501 (Count I), and unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125(a) (Count II). *See* Complaint at ¶¶ 22-25, 31. Webloyalty sought a declaratory judgment that CI had infringed Webloyalty's copyright for the Sell Page, that such infringement was knowing and willful, and that Consumer Innovations be enjoined from continuing to infringe Webloyalty's Copyright. *See* Complaint at pp. 7-8, ¶¶ a-c. Webloyalty further sought a declaratory judgment that CI violated the Lanham Act by utilizing advertisements that are confusingly similar to Webloyalty's trade dress, and that it be enjoined from continuing to compete unfairly. *See* Complaint at Id. at 8, ¶¶d-e.

The Complaint did not plead copyright infringement of Webloyalty's Copyright Registration No. TX5875671 for the Banner. Webloyalty sought a monetary judgment for actual damages comprised of CI's actual profits and Webloyalty's statutory damages, including attorneys' fees and costs, treble damages, punitive damages, as well as pre-judgment and post judgment interest. See Id. at 8-9, ¶¶ f-m. Simultaneously with the filing of the Complaint, Webloyalty filed an Application for a Temporary Restraining Order, or in the alternative, a Preliminary Injunction based upon the conduct which is the subject of Webloyalty's Complaint. On May 26, 2004, Webloyalty filed an Amended Complaint that included an additional claim relating to CI's "Interim Sell Page" that was published on the internet at the Walter Drake website between February 9 and February 13, 2004.

The Complaint and Amended Complaint alleged a potential "Advertising Injury" within the terms of the Policy. In particular the Complaints alleged, "the use of another's advertising idea in [the insured's] 'advertising'" and the "infringement of another's copyright, trade dress or slogan in [the insured's] 'advertising'" under Sections V.2. (c) and (d) respectively. Accordingly, USF&G agreed to provide a defense pursuant to a reservation of rights that its ultimate obligation to indemnify CI would be contingent upon the terms of any final judgment entered by the Court.

**3.   WILLFUL COPYRIGHT INFRINGEMENT IS NOT COVERED UNDER THE POLICY.**

The duty of a liability insurer to defend actions brought against its insured is a separate obligation from the duty to indemnify. USF&G acknowledged its duty to defend and provided CI with an aggressive defense under a reservation of rights. Now that Judgment has been entered, USF&G's duty to defend is complete.

Based upon the Court's Findings of Fact and Conclusions of Law which form the basis for the Judgment, however, USF&G must decline to provide coverage for the Judgment and declines to indemnify CI for the Judgment (or pay Webloyalty as CI's assignee) under the terms and conditions of the Policy. As discussed in our prior reservations of rights, each of the following terms and conditions of the Policy separately and independently preclude coverage for the Judgment: (1) the Knowledge of Falsity Exclusion; (2) the Criminal Acts Exclusion; (3) CI's breach of the Cooperation Clause; and (4) Injunctive Relief.

R. Corey Hill, Esquire
December 12, 2005
Page 7

---

### A. The Knowledge of Falsity Exclusion Applies To Preclude Coverage For CI's Willful Infringement.

Section I A.2(r)(1) of the Policy contains a "Knowledge of Falsity" exclusion which provides in pertinent part as follows:

**2. Exclusions Applicable to the Liability Coverage**

This insurance does not apply to:

\*   \*   \*

r.   "Personal Injury" or "Advertising Injury.

  (1)   Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of falsity.

The Knowledge of Falsity exclusion precludes coverage under the Policy for the Judgment based upon the Court's finding that Webloyalty's alleged Advertising Injury was the result of willful copyright infringements by CI.

The Court's findings indicate that, not only was the infringement "willful," it was also done with the intent to cause harm. Specifically the Court found that, "The knowledge of these CI principals strongly indicates that the wholesale copying of the Webloyalty Banner and Sell Page was done with knowledge of or reckless disregard for the possibility that this copying would be copyright infringement." (CL at ¶14). The Court further found, "That Gordon and Edwards persisted in testifying that no copying took place demonstrates their willingness to deceive and their consciousness of their culpability for infringement...." (CL at ¶15). "These facts unmistakably demonstrate CI's blameworthiness in this case." (CL at ¶19).

Based upon the Court's Findings of Fact and Conclusions of Law and Judgment, the Knowledge of Falsity of exclusion applies to preclude coverage for CI's willful infringement. USF&G therefore must decline to provide coverage to CI in connection with the Judgment. While USF&G acknowledged its duty to defend, USF&G has no duty to indemnify CI in connection with the Judgment.

### B. The Criminal Acts Exclusion Applies To Preclude Coverage For CI's Willful Infringement.

Section I A.2(r)(3) of the Policy contains a "Criminal Acts" exclusion which provides in pertinent part as follows:

**2. Exclusions Applicable to the Liability Coverage**

This insurance does not apply to:

7

R. Corey Hill, Esquire
December 12, 2005
Page 8

---

\* \* \*

    r.    "Personal Injury" or "Advertising Injury":

\* \* \*

    (3)    Arising out of a criminal act committed by or with the consent of the insured.

In its Findings of Facts, the Court found all the elements necessary for a criminal conviction for "Criminal Infringement" in violation of 17 U.S.C. §506(a) and/or perjury in violation of 18 U.S.C. §1621(1).

The Court found, *inter alia*, that, "CI's infringement of the Webloyalty Sell Page and Banner was indeed willful. First, Gordon testified that he understood copyright protection..... Gordon and Edwards each testified that they understood that copying expressive material was wrong.... The knowledge of these CI principals strongly indicates that the wholesale copying of the Webloyalty Banner and Sell Page was done with knowledge of or reckless disregard for the possibility that this copying would be copyright infringement." (FF at ¶14 (citations omitted). *See also* FF at ¶16.)

The Court found, *inter alia*, that, "Gordon and Edwards testified repeatedly in depositions and at trial that CI did not copy portions of the Webloyalty Sell Page in the CI Sell Page.... In the face of the overwhelming evidence of copying, including the CI draft of a sell page containing Webloyalty's telephone number, this testimony appears deliberately deceitful. That Gordon and Edwards persisted in testifying that no copying took place demonstrates their willingness to deceive and their consciousness of their culpability for infringement. As I said at the trial: It borders .. if not crosses the border, into ... perjury."

The Criminal Acts exclusion does not require that CI or its principals be charged or convicted of a crime for the exclusion to apply. Since the elements of criminal infringement under 17 U.S.C. §506(a) and/or perjury under 18 U.S.C. §1621(1) have been met by the Court's Findings of Fact and Conclusions of Law, the Criminal Acts exclusion applies to preclude coverage for CI's willful infringement. USF&G therefore must decline to provide coverage to CI in connection with the Judgment. While USF&G acknowledged its duty to defend, USF&G has no duty to indemnify CI in connection with the Judgment.

## 4. CI'S BREACH OF THE COOPERATION CLAUSE PRECLUDES COVERAGE FOR THE JUDGMENT.

The Policy Conditions found in the Liability Coverage Part (form CL/PF 20 10 09 99) read, in pertinent part, as follows:

    **2.**    **Duties In The Event Of Occurrence, Offense, Claim or "Suit"**

\* \* \*

R. Corey Hill, Esquire
December 12, 2005
Page 9

---

      c.      You and any other involved insured must:

                  \*      \*      \*

      (3)    Cooperate with us in the investigation, settlement or defense of the claim or "suit;"

The Court's award of statutory damages and attorneys' fees in the Judgment was primarily based upon its findings of CI's "persistent willful deception." (Conclusions of Law at ¶19). In regards to the attorneys' fees and costs, which constitute the majority of the damages awarded, the Court found, "CI's blameworthiness and the need to deter conduct that borders on or constitutes perjury strongly support an award of attorneys' fees and costs in this case." (Conclusions of Law at ¶24). The Court's award of monetary damages was based substantially, if not exclusively, on CI's "willingness to hide their infringement." (Conclusions of Law at ¶15) The Court's findings were based on CI's testimony, in light of the existence of the first draft of the Sell Page which contained Webloyalty's phone number, which the court concluded was "deliberately deceitful." (Conclusions of Law at ¶15).

From the time that CI gave notice of Webloyalty's claim, CI took the position that it did not actually or intentionally copy Webloyalty's Sell Page. CI did not itself produce PTX 43 (CI's first draft of the Sell Page which included Webloyalty's phone number) or advise USF&G or its defense counsel of its existence. Instead, PTX 43 was produced by Hungry Mind, in response to a third party subpoena served by Webloyalty after the depositions of Mr. Gordon and Mr. Edwards were taken.

CI's failure to produce the first draft of the Sell Page or advise of its existence was in violation of its duty to cooperate. CI's breach of the cooperation clause precludes coverage under the Policy for the Judgment. Furthermore, as set forth in our letters to you of April 6, 2004 and May 6, 2004, we stated that the circumstances of CI's execution as well as the terms of the Settlement Agreement and Covenant not to Execute violated the Cooperation Clause. To the extent that Webloyalty attempts to enforce this Agreement, we continue to rely on the assertions in those letters.

**5.    INJUNCTIVE RELIEF**

Demands for injunctive relief are not covered by the Policy. While the Judgment includes a permanent injunction against CI from using the Sell Page or Banner or any other substantially similar material, it did not award any damages in connection with the injunctive relief sought. Therefore, based upon the application of the foregoing exclusions, USF&G has no duty to indemnify CI for any portion of the Judgment.

**6.    CONCLUSION**

R. Corey Hill, Esquire
December 12, 2005
Page 10

---

Nothing in this letter should be construed as a waiver of USF&G's rights under any of the provisions of the Policy or the law, or any other defense that USF&G may have. USF&G expressly reserves all of its rights to limit or deny coverage for this matter on the basis of any additional grounds.

Please note that the USF&G's present coverage determination is based on the information that has been made available to date. If you have any other information that you believe may affect our coverage analysis or if you have questions about the substance of this letter, please free to contact me.

Very truly yours,

UNITED STATES FIDELITY
& GUARANTY COMPANY

By:   Daria G. Fitzgerald

Enclsoures
DFG
cc:   Bill Johnson, Consumer Innovations, LLC