# Exhibit 14



**Property and Liability Insurance**

Technology Claim
167 Cherry Street #424
Milford, CT 06460
203.877.0129 Tel
203.877.4229 Fax
www.stpaul.com

February 12, 2004

**VIA U.S. MAIL and CERTIFIED MAIL R.R.R.**

Bill Johnsen
Consumer Innovations LLC
7228 Dreamy Draw Dr.
Phoenix, AZ 85020

**Re: Insured:**     **Consumer Innovations, LLC**
     **Claimant:**     **Webloyalty.com, Inc.**
     **Tracking No:**     **SI11422**
     **Policy:**     **BK01443023**

*United States District Court, District of Delaware*

*Webloyalty.com, Inc. vs. Consumer Innovations, LLC*

Dear Mr. Johnsen:

Please allow this letter to serve as a follow up to our previous correspondence and telephone discussions on this matter.

United States Fidelity & Guaranty Insurance Company ("USF&G") has received and reviewed the materials presented to us as well as the policy issued by USF&G to Consumer Innovations, LLC. ("Consumer Innovations"). Based on our review of the policy and the material presented to us to date, USF&G will agree to provide a defense to Consumer Innovations in the above captioned matter. USF&G provides this defense subject to a reservation of rights, as detailed below.

Our coverage review is based on the language in the policy and on the allegations made by the plaintiff, Webloyalty.com, Inc. ("Webloyalty"). We realize that you may dispute those allegations. Please note that in referring to those allegations, USF&G does not mean to imply that any of them are true. However, USF&G must necessarily refer to those allegations in determining its coverage obligations for Consumer Innovations under the policy.

This letter will detail the nature of the litigation, the coverage afforded under the policy, and our coverage analysis.

### I. THE LITIGATION

According to the information provided to us, Webloyalty filed suit against Consumer Innovations on or about February 9, 2004, in the United States District Court, District of Delaware. Webloyalty filed a Summons, Complaint, Motion for a Temporary Restraining Order or in the Alternative a Preliminary Injunction; a Brief in Support of Its Motion and a Declaration of Richard Fernandes, Webloyalty's Chief Executive Officer. It is our understanding that Consumer Innovations was first served with the Complaint via fax on February 9, 2004, and the remaining materials via Federal Express on February 10, 2004. It is also our understanding that at the hearing on February 10, 2004, the Judge scheduled a subsequent hearing for this coming Tuesday, February 17, 2004. USF&G was first notified of this matter on February 10, 2004, following the hearing.

Webloyalty alleges that Consumer Innovations has "copied two advertisements owned by Webloyalty (and)…."then arranged for those advertisements to appear on the very same website on which the Webloyalty advertisements appear." Webloyalty alleges that Consumer Innovations "first placed its banner on the Walter Drake confirmation page…on or about January 15, 2003 – one month after Webloyalty's banner began appearing there."

The Complaint contains two Counts against Consumer Innovations; Count I, for Copyright Infringement under 17 U.S.C. S501; and Count II, for Unfair Competition, under 15 U.S.C. S1125 (a). Webloyalty demands a judgment of infringement; a judgment that the infringement was "knowing and willful;" a judgment "permanently enjoining [Consumer Innovations]…..from…infringing Webloyalty's copyright;" a judgment that Consumer Innovations has violated the Lanham Act, 15 U.S.C. S1124 (a); ; a judgment "permanently enjoining [Consumer Innovations]…..from…infringing Webloyalty's trade dress;" a judgment for "actual damages and [Consumer Innovations's] profits attributable to infringement of Webloyalty's Copyright;" a judgment to Webloyalty for statutory damages, attorneys' fees and costs; judgment for Consumer Innovations's profts and damamges pursuant to 15 U.S.C. S1117; treble damamges and profits pursuant to 15 U.S.C. S1117; compensatory and punitive damages; reasonable attorneys fees, costs, and disbursements; pre and post judgment interest; and "other and further relief."

The plaintiff has also moved for a temporary restraining order, or in the alternative a preliminary injunction enjoining Consumer Innovations from "further infringing Webloyalty's copyrighted advertisement and.... protected trade dress."

## II. COVERAGE

Coverage is provided to Consumer Innovations, LLC. by USF&G under policy BK01443023, from 5/14/2003 to 5/14/2004.

The policy includes Commercial General Liability coverage, form CL/BF 2010 09 99, with limits of $2,000,000 General Aggregate; $1,000,000 Products-Completed Operations Aggregate; $1,000,000 Personal Injury Limit, $1,000,000 Advertising Injury Limit, and $1,000,000 Each Occurrence Limit.

## III. COVERAGE ANALYSIS

### *A.  There is No Coverage under the Bodily Injury or Property Damage Insuring Agreement*

The policy contains the following Insuring Agreement, which reads, in pertinent part, as follows:

**SECTION I - COVERAGE**

    **A.   LIABILITY**

**1.   Insuring Agreement**

a.   We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury,' 'property damage,' 'personal injury' or 'advertising injury' to which this insurance applies. However, if a Retained Limit - Property Damage is shown in the Liability Coverage Part Declarations, this insurance applies in excess of the Retained Limit. We have no obligation to pay damages because of 'property damage' unless and until the amount of such damages exceeds this Retained Limit. We will have the right and duty to defend

3

the insured any 'suit' seeking damages for 'bodily injury,' 'property damage,' 'personal injury' or 'advertising injury' to which this insurance applies. We may at our discretion investigate any 'occurrence' or offense and settle any claim or 'suit' that may result...

**b.** This insurance applies to:

**(1)** 'Bodily injury' or 'property damage':

   **(a)** Caused by an 'occurrence' that takes place in the 'coverage territory;' and

   **(b)** That occurs during the policy period.

The policy carries a "Bodily Injury" Definition, "Telecasting" Definition and Employment Related Practices Exclusion Amendment (form CL/BF 20 15 02 00) which defines "bodily injury" as follows:

   'Bodily Injury' means any physical harm, including sickness or disease, to the physical health of other persons. It includes any of the following that results at any time from such physical harm, sickness or disease:
   (1)   Mental Anguish, injury, or illness; and,
   (2)   Emotional distress.

The policy defines 'property damage' as follows:

   'Property damage' means:
   a.   Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
   b.   Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the 'occurrence' that caused it.

*Webloyalty does not allege or seek to recover damages because of bodily injury or property damage as defined by the USF&G policy. Hence, there is no coverage for this*

4

*matter under the Bodily Injury and Property Damage portion of the Insuring Agreement of the USF&G policy.*

### B. Even if property damage or bodily injury were alleged (they are not), there is no coverage because the alleged activities of Consumer Innovations do not constitute an 'occurrence.'

The policy contains the following definition of 'occurrence':

> 'Occurrence' means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

*Even if Webloyalty sought to recover for 'property damage' or 'bodily injury,' this damage would not be covered because it was not caused by an 'occurrence,' as defined in the USF&G policy. Accordingly, even if property damage or bodily injury were alleged (they are not), there would be no coverage for this matter under the Bodily Injury and Property Damage portion of the Insuring Agreement of the USF&G policy.*

### C. There is No Coverage under the Personal Injury Insuring Agreement

The Personal Injury portion of the Insuring Agreement reads, in pertinent part, as follows:

This insurance applies to:

> (2) 'Personal injury' caused by an offense arising out of your business, except 'advertising,' 'publishing,' 'broadcasting' or 'telecasting' done by or for you, that:
> (a) Was first committed in the 'coverage territory;' and
> (b) Was committed during the policy period.

Personal Injury is defined as follows:

'Personal injury' means injury, other than 'bodily injury,' arising out of one or more of the following offenses:

   a. False arrest, detention, or imprisonment;
   b. Malicious prosecution;
   c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;
   d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or
   e. Oral or written publication of material that violates a person's right of privacy.

*The alleged activities of Consumer Innovations do not constitute a personal injury offense under the policy; and Webloyalty does not allege or seek to recover damages because of personal injury. As such, there is no coverage for this matter under the Personal Injury portion of the Insuring Agreement.*

### D. Coverage under the Advertising Injury Insuring Agreement

The Advertising Injury portion of the Insuring Agreement reads, in pertinent part, as follows:

**This Insurance applies to:**

(3) 'Advertising Injury' caused by an offense committed in the course of advertising your goods, products or services that:
   (a) Was first committed in the 'coverage territory;' and
   (b) Was committed during the policy period.

Advertising Injury is defined as follows:

'Advertising Injury' means injury arising out of one or more of the following offenses:

   a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products, or services;
   b. Oral or written publication of material that violates a person's right of privacy;
   c. The use of another's advertising idea in your advertising;

6

    d. Infringement of another's copyright, trade dress or slogan in your "advertising."

'Advertising' means attracting the attention of others by any means for the purpose of seeking customers or supporters or increasing sales or business.

*Webloyalty.com may allege an advertising injury offense under the policy.*

Please note the following exclusion, which may be applicable to this matter:

**Exclusions Applicable to the Liability Coverage Part.**

This insurance does not apply to:

**r. "Personal Injury" or "Advertising Injury"**

"Personal" or "Advertising Injury":

**(1)** Arising out of <u>oral or written</u> publication of material, if done by or at the direction of the insured <u>with knowledge of its falsity.</u>

*Webloyalty alleges "knowing and willful" infringement, and damages resulting thereof. Any claims for such willful infringement, or damages resulting from same, are not covered under the policy.*

### *IV. Injunctive Relief, Disgorgement of Profits, Punitive Damages, Policy Limits, Additional Costs Incurred by the Insured.*

*We wish to point out that Webloyalty's Complaint include demands for injunctive relief. Any such demands are not covered under the policy. Additionally, Webloyalty's demands for punitive damages and demands for defendant's profits are not covered under the policy.*

*Webloyalty does not specify an amount of damages. Under no circumstances would USF&G be responsible for any demands in excess of the policy limits.*

7

*Lastly, as discussed, we wish to advise you that any costs incurred by or on behalf of Consumer Innovations to destroy, change, or alter the alleged infringing material are not covered damages under the policy.*

Nothing in this letter should be construed as a waiver of USF&G's rights under any of the provisions of the policy or the law, or any other defense that USF&G may have. USF&G expressly reserves all of its rights to limit or to deny coverage for this matter on the basis of any additional grounds.

Please note that USF&G's present coverage determination is based on the information that has been made available to date. If you have any other information that you believe may affect our coverage analysis or if you have any questions about the substance of this letter, please feel free to contact me.

As you are aware, your current defense counsel, The Cavanagh Law Firm, and I have been discussing your defense, and I will be in touch with you soon to discuss same. I look forward to working with you towards a successful resolution of this matter.

Sincerely,

*Daria B. Fitzgerald*

Daria G. Fitzgerald
Senior Claim Specialist
UNITED STATES FIDELITY AND GUARANTY COMPANY

Cc: Carol Davenport
    Schaefer-Smith Akeney